# Richmond.

## SAUNDERS v. GRIGGS' ADM'R AND ALS.

### MARCH 11th, 1886.

1. CHANCERY PRACTICE—*Decrees by default—Errors—Motion to correct.*—The notice under Code 1873, ch. 177, § 5, need not specify the errors for which the court is asked to correct or reverse its judgment by default, or decree in bill taken for confessed.

2. APPELLATE COURT—*Objections there—Substantial defects—Irregularities.*—Objections may be taken here, for first time, which are based on substantial grounds ; such as want of jurisdiction of subject or of parties, a good cause of action, a valid verdict, or a proper judgment. But *secus* when the objections are based on mere irregularities.

3. IDEM—*Appeal—Parties not appealing.*—Where parties appealing and parties not appealing, stand upon same ground, and their rights are involved in same question and are equally affected by same judgment or decree, this court will consider the whole case and settle the rights of the parties not appealing, as well as those who bring up the case by appeal. *Purcell* v. *McCleary*, 10 Gratt. 246 ; *Ashby* v. *Bell*, 80 Va. 811. But *secus*, when the parties stand upon distinct and unconnected grounds, &c. *Walker* v. *Page*, 21 Gratt. 652–3.

3. CHANCERY PRACTICE—*Creditor's bill—Separate suit—Demurrer.*—Where a creditor's bill has been filed against the administrator and legatees, a decree for an account has been entered in the cause, and the account has been taken, reported and confirmed ; no other creditor (especially one whose debt has been established by the confirmation of that report) can maintain a separate suit for the establishment of his debt. And if the bill shows he had knowledge of the decree for account in the first suit, his suit will be dismissed upon demurrer. *Kent* v. *Cloyd*, 30 Gratt. 555.

4. CASES REVIEWED.—*Gunn* v. *Turner*, 21 Gratt. 382, examined and explained.

Appeal from decree of corporation court of Danville, rendered June 6th, 1882, in the chancery cause of Greenberry T. Griggs, administrator of Jeremiah Griggs, deceased, and administrator *de bonis non* with the will annexed of George Hairston, senior, deceased, for the benefit of himself as such administrator, of P. Henry, George W. Napier, Thomas J. Penn, John Staples, and of John H. Davis and E. J. Pannill, committee of George H. Calloway, a lunatic, creditors of the said George Hairston, complainants, *against* Fleming Saunders and nineteen others, defendants.

The facts of the case are as follows :

In 1863, George Hairston, senior, of Henry county, died, leaving a will which was duly admitted to probate, and Jeremiah Griggs qualified as administrator with the will annexed. By his will the testator bequeathed considerable real and personal property, and, amongst other things, $1,000 of Virginia State stock to each of seventeen grandchildren. In June, 1866, the administrator delivered to each grandchild the legacy aforesaid, taking from them, respectively, refunding bonds with approved security. In 1874, one George W. Napier, a creditor of the estate, instituted in the circuit court of said county, a creditors' suit for the benefit of all the creditors, which suit is still pending. In that suit an account was ordered and taken of the assets and of the debts of the estate, which account was reported, and was, by said circuit court, confirmed at its May term, 1877.

The testator was liable as the surety of the committee of George H. Calloway, a lunatic, for some $16,900. Nothwithstanding this creditors' suit, then pending, on the 27th of March, 1880, Greenberry T. Griggs, administrator of said Jeremiah Griggs, then deceased, who had been administrator *c. t. a.* of said testator, as such administrator, filed his bill in said circuit court, at the relation and for the benefit of P. Henry, George W. Napier, Thomas J. Penn and others, creditors of the

testator, against Fleming Saunders, the appellant here, and John S. Draper, and Susan J., his wife, and the other legatees of the testator, alleging the death of the testator, his will and its probate, the administratorship of the said Jeremiah Griggs, the indebtedness of the testator's estate to said Jeremiah, as such administrator, for the costs and charges of the administration, and to the other relators in certain specified sums, amounting in the aggregate to $20,805.56, principal, besides interest and costs, including, however, the said debt as security to said lunatic's estate, as having been ascertained by decrees of the said circuit court in the said creditors' suit, and of the chancery court of the city of Richmond, in a suit to which the said legatees were parties; the legacies to the said grandchildren, and the payment of the same, and the taking of said refunding bonds. The bill also charged that after the execution of said refunding bonds, the said debts had appeared and been established against the estate, and that all, or *nearly all*, of the property embraced in the will, except the said specific bequests, had been applied in the due course of administration, and that the residue of unadministered assets, together with the amounts realized by the legatees out of the said specific legacies of stocks, was wholly insufficient to pay the said debts; that the conditions of the said bonds had been broken; that since the execution of the bonds John S. Draper, C. H. Ingles and W. D. Bungle had intermarried with three of the female legatees. And the bill prayed that the defendants answer on oath, and say particularly, what amount had been realized upon said legacies; that proper accounts be taken, and that the defendants be required to pay to the complainant for the use of said relators, the market value of the said legacies, or such proportions thereof as might be necessary to discharge the said debts.

At the May rules, 1880, the said cause was set for hearing as to all the defendants except Henry Saunders, the appellant

here, and five others, as to whom it was continued, those six not having been served with process. At May term, 1880, Draper and others, as to whom the cause had been set for hearing, filed their demurrer to the bill, assigning that the complainant's remedy was plain and adequate at law by action on the refunding bonds. These defendants also filed their joint answer, averring that the testator's estate was sufficient to satisfy all lawful demands against it, without recourse upon said legacies, and referred to the records of said creditor's suit of *Napier* v. *Hairston's Adm'r, &c.,* then pending in the said circuit court, and denied the alleged breach of the condition of said refunding bonds, and denied also the liability of said Draper, Ingles, and Bungle on the said bonds on account of the supposed liability thereon of their respective wives. But, at the same term, the said circuit court overruled their said demurrer, and ordered an account to be taken by Commissioner Bryant of the indebtedness and of the assets of the estate, of the specific legacies, and the amount realized therefrom, of the solvency of the obligors in the said bonds, of the liabilities of the several defendants arising from the execution of said bonds, or from intermarrying with the said female obligors for the indebtedness of the estate, &c. On the 8th of October, 1880, Commissioner Bryant returned his report, showing the indebtedness of the estate to be $21,694.79, as of January 1, 1880. It showed no other assets than the specific legacies, which nominally amounted to $26,000, but the actual value of which aggregated only $8,353, and that all the obligors were solvent except seven.

Fleming Saunders, the appellant here, was served with process January 3, 1881, and the cause was set for hearing as to him and the other defendants, who, like him, had not been previously served with process at March rules, 1881. On the 3d of May, 1881, the cause was heard on the papers formerly

read, the bill taken for confessed as to the said Fleming Saunders, and the said remaining five defendants, the report of Commissioner Bryant, and the depositions and exhibits returned therewith, and the said report, without exceptions thereto, was confirmed, and a decree was then entered that Fleming Saunders pay to the complainant $766, with interest from June 18, 1866, and that J. S. Draper, and Susan J., his wife, and C. H. Ingles, and Bettie M., his wife, each pay to the complainant the sum of $766, with interest as aforesaid, and so as to the obligors in each of said bonds, except such of them as had pleaded their several discharges in bankruptcy. On the 21st day of May, 1881, a vacation order was entered, at the instance of Fleming Saunders and others, suspending the decree of May 3, 1881, to allow time for a petition for appeal. And after due notice said Fleming Saunders, on the 6th of June, 1882, moved the court, under section 5, chapter 177, Code of 1873, to reverse the said decree of May 3, 1881, for certain errors specified in the notice. But the court, being of opinion that there was no error in the decree, overruled the motion and dismissed the notice. From the decree last mentioned said Saunders obtained from one of the judges of this court an appeal and *supersedeas.*

*Samuel W. Williams*, for the appellant.

*Whittle & Anderson* and *Green & Miller*, for the appellees.

RICHARDSON, J., after stating the case, delivered the opinion of the court.

As has been stated, this case is here on appeal from the decree of the court below overruling the appellant's motion to reverse the decree of May 3d, 1881, by which Commissioner

Bryant's report was confirmed and the appellant and others required to pay to the complainant below, the appellee here, the several sums for which, according to that report, he and his co-defendants were liable on the refunding bonds executed by them on the receipt of their specific legacies.   Such motion, in the court which rendered the decree complained of, and its overruling by said court, were essential in order to enable this court to allow an appeal, because the decree was rendered upon the complainant's bill taken for confessed.   Code 1873, chapter 177, sections five and six.   By the fifth section the court which gives such decree may, upon motion, reverse it " for any error for which an appellate court might reverse it."   It is true this section requires that every motion under this chapter shall be after reasonable notice to the opposite party.   But nowhere in that chapter is it required that the notice shall *specify* the errors on the face of the record, &c., for which the reversal is asked. Under Code 1873, chapter 178, section eight, a petition for an appeal, &c., must assign errors.   Yet it is the well known practice for appellate courts not to confine themselves to the errors specified in the petition, but to reverse the decree complained of for any substantial error disclosed by the record, whether mentioned in the petition or not.   It is then difficult to perceive how this court, in the case of *Gunn* v. *Turner's Administrator*, 21 Gratt. 382, could have arrived at the conclusion counsel for the appellee contends it came to in that case; that though said chapter 177 does not require the notice of the motion to reverse a decree under sections five and six to assign the errors, yet the court will not notice any error, however substantial it may be, and however patent on the face of the record it may be, and however clearly it may be such an error as an appellate court would reverse the decree for, unless the errors are assigned.   It is true that in that particular case, Staples, J., speaking for the court, did say that the motion in

that case having been made only to reform the judgment by applying thereto certain credits, which had been inadvertently omitted, and by settling and directing at what scale of depreciation it should be discharged, according to the act for adjusting Confederate liabilities, and no motion having been made in the court below to reverse or amend the judgment for the error then for the first time assigned, to-wit: that the said judgment had been rendered upon a joint bond against the four obligors therein, and the process having been served only on three, the ground raised in this court as to the error last mentioned was not before it and no opinion could be expressed thereon. If the language used by that learned judge could be fairly interpreted to mean that an appeal from a decree of the court below, refusing on motion, made in it on reasonable notice to the opposite party, to reverse a decree made by it on a bill taken for confessed, this court will refuse to notice a substantial error apparent on the face of the record and injurious to the party appealing from it, simply because particular attention had not been called to such error in the court below, when the whole record is laid before this court for inspection and for amendment or reversal, we would feel constrained to disapprove the proposition. But we do not think the language susceptible of such construction. In that case the motion made in the court below was to reform the judgment by applying thereto certain omitted credits, and " by settling and directing at what scale of depreciation it should be discharged, according to the act for adjusting Confederate liabilities." The court below, "*upon the evidence adduced,*" refused the motion, and the case was appealed, but without taking any bill of exceptions showing what the evidence in support of the motion was, or what it tended to prove; and this court, in the absence of anything in the record to guide it to a different conclusion, properly affirmed the judgment of the court below, as to the motion

actually made in that court. In this court, however, the appellant went further, and assigned for error that the judgment of the court below was wrong because of the four obligors to the bond sued on process was served only on three, and the judgment was against all. In the statement of the case it is said: "The process was executed on all the defendants except Tanquary, as to whom it was silent. The declaration was against all, and they not appearing, the office judgment was confirmed against them, including Tanquary." This court said: "This question raised by the second assignment of error is, therefore, not before this court, and no opinion is expressed thereon." And the judgment of affirmance was without prejudice to the right of the plaintiffs in error to move in the court below to reverse or amend the original judgment against them, upon the ground suggested in said second assignment of error. The ruling in that case was not based upon the untenable ground simply that the error alleged had not been assigned in the court below, but evidently on the broader, well established doctrine that, in the absence of evidence showing affirmatively that process had not been executed on one of the parties defendant, the court below, being a court of competent jurisdiction, and both the subject matter and parties being within that jurisdiction, the judgment "is presumed to be right until the contrary is shown, and a party in an appellate court, alleging error in the court below, must show it in the regular way, or the presumption in favor of its correctness must prevail." *Harman* v. *City of Lynchburg*, 33 Gratt. 37 ; *Hill* v. *Woodward*, 78 Va., 765. In looking to the whole record in *Gunn* v. *Turner's Adm'rs*, the court could find nothing to overturn the presumption in favor of the correctness of the judgment below, and therefore it could but affirm that judgment. Had it been shown affirmatively that the process was not served, this court would doubtless have reversed

the judgment below.   It is clear that the ruling in that case does not support the contention of the appellees here.

It is true that objections on the mere ground of irregularity cannot be made for the first time in the appellate court; but such is not the case as to objections based on grounds of substantial justice, as the necessity of these bring jurisdiction over the subject matter and the parties to the suit, a good cause of action, a valid verdict, and a proper judgment.   See Powell on App. Pro. 178.

It is true that in the case at bar the notice of the motion to reverse is very comprehensive, specifying six different errors, though not specifying the error assigned in the petition for appeal, to-wit : that it was error in the court below to enter any decree for an account at the May term, 1880, when the appellant and several other defendants, obligors in the refunding bonds, had not been summoned, and were not before the court, although named as defendants in the bill and shown to be necessary parties and seriously interested in the subject matter of the accounts ordered.   And neither the said notice nor the said petition mention it as error in the court below to have a report made under said decree of account, which was taken and reported before the appellant had been summoned or was before the court and whilst the cause was yet at rules as to him, any decree requiring him to pay money.   And yet, if such errors were apparent on the face of the record when it was before the court below for inspection and reversal, upon motion under said fifth section for any error for which an appellate court would reverse the decree, upon an appeal to this court from the decree of the court below refusing to reverse it, for this court to shut its eyes to such errors, simply because they had not been designated, would be sheer denial of justice.

This court will therefore in inspecting the whole record of this case examine and pass upon any errors which may be

patent on the face of the record, which are substantive, which injuriously affect the appellant, and which may not have been by him manifestly waived.

The first and main question then to be examined is the ground of the demurrer to the bill. Had the court below, on its chancery side, jurisdiction to entertain the case made by the complainant's bill? The debts of the complainant and those for whom he brought this suit had been fully established against the estate of the testator in the pending suit of *Napier* v. *Hairston's Administrator*. That was a creditor's bill filed against the administrator and the legatees of the testator, George Hairston, deceased; a decree of account had been entered therein; the account had been taken, reported and confirmed; the report showed the existence of the debts set up in the bill here, and the confirmation of the report in that case established those debts against the testator's estate. Therefore no other creditor, and least of all, a creditor who was a party to that suit, could bring another suit for the satisfaction of his debt. All this appears on the face of the bill, and it is evident that the complainant had knowledge of the proceedings in that suit. And therefore upon the authority of *Stephenson* v. *Taverners*, 9 Gratt. 398, and *Kent's Administrator* v. *Cloyd's Administrator*, 30 Gratt. 555, the complainant's bill should have been dismissed on demurrer. In this case the demurrer to the bill was put in by other defendants before the appellant had a day in the court below to defend himself. But he specifically pointed out in his said notice that fact as an error patent on the face of the record, for which the decree of May 3d, 1881, should be reversed.

When the testator's debts aforesaid had been established as they were in the said suit of *Napier* v. *Hairston's Administrator*, &c., the circuit court should have proceeded to take such additional and further steps as were necessary in order to secure the

satisfaction of said debts out of the assets of the testator's estate, whether by decreeing a sale of the real estate, or by compelling a contribution or refunding by the recipients of the specific legacies on account whereof the refunding bonds had been required and given.

As already intimated the decree of May 3, 1881, is erroneous as respects the appellant, because it was based on a report of an account ordered and taken before he had been summoned to answer the bill or had a day in court for his defence, and because it required him to pay money on a liability ascertained by said account. The appellant is therefore entitled to have the decree complained of reversed on account of the failure of the court below thereby to reverse the said decree of May 3, 1881, on his motion, because it was a substantive error, patent on the face of the record, and by which he is aggrieved; and this, notwithstanding the notice of his motion did not specifically point out such error.

The court below said expressly that "there was no error in said decree," thereby showing that it had not confined itself to errors designated in the notice, but had considered the motion for reversal as bringing before it the entire record for inspection, as was entirely proper. But, since we hold that the bill on its face discloses a case of which the court below should not have taken cognizance, but should have dismissed the same, such decision renders unnecessary any decision upon any of the other questions raised by the petition or by the printed or oral arguments here, as that decision cuts up by the roots the entire cause, *quoad* the appellant, Fleming Saunders, as to whom, the decree complained of here, must be reversed, and the decree of May 3, 1881, must also be reversed, and the bill of complainant below, the appellee here, must be dismissed.

But the question arises, how does the above decision affect the co-defendants of the appellant in the court below, who did

not appeal from the decree of May 3, 1881, though by its decree of May 21, 1881, the court below suspended the former decree upon their signifying a desire to apply for an appeal ? The principles upon which this question is properly answered are plain and well settled; though it must be admitted their application is often very difficult.

In *Walker's Ex'or* v. *Page*, 21 Gratt. on pages 652 and 3, Christian, J., speaking for the court, said : " The rule established by the practice and decisions of this court may be stated to be this : Where the parties stand upon distinct and unconnected grounds, where their rights are separate and not equally affected by the same decree or judgment, then the appeal of one will not bring up the rights or claims of the other." Citing *Tate* v. *Liggat* and *Mathews*, and *Liggat* and *Mathews* v. *Morgan*, 2 Leigh, 84, 107. "But where the parties appealing, and the parties not appealing, stand upon the same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment, this court will consider the whole case, and settle the rights of the parties not appealing, as well as those who bring up their case by appeal." Citing *Lewis* v. *Thornton* 6 Munf. 87, 97 ; *Lenow* v. *Lenow*, 8 Gratt., 349 ; *Liggat* and *Mathews* v. *Morgan*, 2 Leigh 91 ; *Purcell* v. *McCleary*, 10 Gratt., 246 ; *Ashby* v. *Bell*, 80 Va., 811. Now, to apply this rule to the case here, all the defendants below were specific legatees under the will of George Hairston, senior, deceased ; all received stock which was sold at its market value ; all gave refunding bonds each for his own legacy ; and all were parties to the creditor's suit of *Napier* v. *Hairston's Administrator and als.* This suit was brought against all of them to compel them all to refund the amounts of their several interests. The question is raised by the joint demurrer of John S. Draper and wife, and the rest of the defendants who were first served with process, and afterwards by motion to reverse

by the appellant, Fleming Saunders, upon the one common ground that the case made by the bill was not one of which the court below should take cognizance, because of the pendency of said creditors' suit of *Napier* v. *Hairston's Administrator and others*, wherein the debts set up by the bill had been established against the estate of their common testator and ancestor. And now that bill is held to be defective and without equity upon a ground that is common to all the defendants, as well as those who did not appeal as to the appellant himself. The statute declares that when this court shall reverse the decision of an inferior court, " it should enter such judgment, decree or order as the court, whose error is sought to be corrected, ought to have entered ;" and this court being of opinion that the decree of the circuit court was erroneous in overruling the demurrer to the bill and in taking cognizance of the case made thereby, can of necessity enter no other decree than one dismissing the bill, which is the decree the circuit court ought to have entered. And therefore the bill must be dismissed as to all the defendants, the rights of all of them being equally affected by the decree reversed.

DECREES REVERSED.