# Richmond

## Town of Stephens City v. D. M. Zea, Et Al.

January 14, 1963.

Record No. 5513.

Present, All the Justices.

The opinion states the case.

*Morton L. Wallerstein* and *Lee S. Lovett* (*Wallerstein, Goode, Adamson & Dobbins,* on brief), for the plaintiff in error.

*J. Sloan Kuykendall* and *Peter K. McKee* (*Kuykendall & Whiting,* on brief), for the defendants in error.

EGGLESTON, C. J., delivered the opinion of the court.

D. M. Zea and others, hereinafter referred to as the plaintiffs or taxpayers, filed in the court below their motion against the Town of Stephens City for a judgment declaring that their respective properties do not lie within the corporate boundaries of the town, and that any attempt on its part to exercise jurisdiction, dominion or control over them, their properties and businesses, is illegal and void.

In their motion for judgment the taxpayers alleged that the town was incorporated under the laws of Virginia in 1758; that its corporate boundaries were first established by a plat and survey made by James S. Larrick in 1884 and duly recorded; that such corporate boundaries were confirmed and fixed by later plats and surveys; that from the time of the "creation" of the town, until 1960, its officers, officials and populace have at all times considered that its corporate boundaries were the same as fixed by such plats and surveys, and all of the town's municipal functions have been restricted to the area within such boundaries. However, they alleged, since 1960 the town, through its council and officials, has claimed the right to exercise jurisdiction over an additional area in which the plaintiffs' properties are situated and outside of its proper corporate boundaries.

In its response the town agreed that it was incorporated by the Act of 1758. However, it said, by the terms of that act its boundaries were fixed by the establishment of a town on 900 acres of land surveyed and laid off by Lewis Stephens, and that by subsequent acts the General Assembly has recognized the boundaries of the town as so established. The town denied that the Larrick survey of 1884, relied upon by the plaintiff taxpayers, constituted a proper definition of its boundaries and that the properties of the respective plaintiffs lie outside of its corporate limits.

After hearing the evidence ore tenus the lower court held that, except for four lots owned by the plaintiff Zea, the properties of the several plaintiff taxpayers do not lie within the proper corporate boundaries of the town, and that any attempt on its part to exercise jurisdiction, dominion or control over such other plaintiffs, or their

properties and businesses, is illegal and void. From an order carrying into effect this holding the town has appealed.

By the Act of 1758, entitled "An Act for erecting a town on the land of Lewis Stephens, in the county of Frederick," the town of Stephensburg was "established" in this language:

"Town of Stephens-burg estab-lished."

"I.  WHEREAS it hath been represented to this present general assembly, that Lewis Stephens being seised and possessed of nine hundred acres of land, near Opeccan, in the county of Frederick, hath surveyed and laid out forty acres, part thereof into lots of half an acre each, with proper streets for a town, and hath caused a plan thereof to be made, and numbered from one to eighty inclusive, and hath annexed to each of the said lots numbered 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, five acres of land, and to each of the remaining sixty lots ten acres of land, part of the said nine hundred acres: All which lots, with the lands annexed thereto, are purchased by different persons who are now settling and building thereon, and humbly desire that the same may be by act of assembly erected into a town, and that they may enjoy the like privileges as freeholders and inhabitants of other towns in this colony do enjoy: *Be it therefore enacted, by the Lieutenant-Governor, Council and Burgesses, of this present General Assembly, and it is hereby enacted, by the authority of the same,* That the said nine hundred acres of land, so surveyed and laid off by the said Lewis Stephens, be, and the same is hereby erected and established a town, and shall be called by the name of Stephensburg*h*: And that the freeholders and inhabitants of the said town shall for ever hereafter enjoy the same privileges as the freeholders and inhabitants of other towns erected by act of assembly, in this colony, do enjoy. * * *" 7 Hening's Statutes at Large (1756-1763), p. 234.

Beginning shortly after the town was incorporated, Lewis Stephens conveyed more than 100 lots on the perimeter of the town which grew and gained a reputation as a manufacturing center. It was later known as Newtown and formally named Stephens City by the Act of 1948, ch. 229, p. 460.

In 1799 a petition was addressed to the General Assembly by "sundry inhabitants" of the town and others "who have built adjacent thereto," praying that "all the dwelling houses" built at the north end of the town along the road to Winchester, "and out of the limits of the town as now established," be incorporated into and made a part of the town.

Pursuant to this petition, on December 21, 1799, the General Assembly passed an act, the material portion of which reads thus:

"*An ACT for adding certain lots to the Town of Stephensburg, and appointing Trustees thereof.*

"1. *BE it enacted by the General Assembly,* That all the dwelling houses with their appurtenances, which are now built at the north end of the town of Stephensburg, in the county of Frederick, upon the road leading from the said town to Winchester, and without the limits thereof as now established, as also a convenient distance on each side of the said road, extending as far as the north boundary line of Lewis Stephens, senior, so as to include the lands laid off by the said Lewis Stephens, shall be, and the same are hereby added to, and made a part of, the said town of Stephensburg, to all intents and purposes." 2 Hening's Statutes at Large, New Series, p. 216.

On November 1, 1884, the town council adopted a resolution approving a survey and plat made by James S. Larrick, deputy surveyor for Frederick county, of the town's corporate limits. This survey was made pursuant to Chapter LIV, § 1, p. 521, of the Code of 1873, which reads as follows:

"The council or board of trustees of any town heretofore established may, and the council or board of trustees of any town hereafter established, shall cause to be made a survey and plan of the town, showing distinctly each lot, public street and alley, the size and number of the lots and the width of the streets and alleys, with such explanations or remarks as they may deem proper. The said plan, upon being approved by the council or board, shall be entered upon some of their books, and shall afterwards be recorded in the office of the court of the county in which such town or the greater part thereof is, or in the clerk's office of the hustings court, if such town have a hustings court, and remain in such office. It shall be evidence of the boundaries of the said lots, streets and alleys." (Compare, Code of 1950, § 15-765.)

The map portraying this survey shows the various streets and outlines of the several blocks formed thereby, but not the boundaries of the individual lots, which are purported to lie within the limits of the town. It also shows the area of the town as "containing 180 acres more or less." Apparently this area consists of the forty acres divided into half-acre lots and other unidentified lands formerly owned by Stephens. It is agreed that this survey does not include any of the properties of the plaintiffs, other than that of Zea.

*Marginal note:* "An addition made to the town of Stephensburg."

In August, 1958, when the officials of the town were considering the annexation of additional territory, they employed Richard W. Goode, a surveyor, to make a survey and plat of the boundaries of the town. This survey shows the lines to be substantially the same as those on the Larrick survey. Indeed, the minutes of the council show that Goode reported to it that his survey was based on that of Larrick.

However, in January, 1960, the council, by unanimous vote, approved a survey and plat made by Walter M. Duncan which showed the town's boundaries at the time of its incorporation in 1758. In making the survey Duncan relied partly on two old maps which had been in the possession of the council in recent years. An expert testified that judging from the character of the paper and ink, these maps were made "before 1800." One of these maps carried the notations: "Plan of the Town," and "A Plan of the Out Lots and a Sketch of the situation of the Lots in the Town to them." This map shows a platted subdivision containing eighty unnumbered lots and 140 outlots adjacent thereto. The other map, entitled "Plat of Newtown," purports to show the owners of the respective eighty lots in the subdivision. Duncan testified that his examination of the records showed that the lots delineated on these two maps were on 886 acres of land owned by Lewis Stephens in 1758.

There is evidence on behalf of the plaintiff taxpayers that the town officials and populace had long considered that the Larrick survey correctly delineated the town's corporate boundaries. On the other hand, there is considerable evidence, including the minutes of the council, showing that the boundaries have been the subject of continuous dispute since 1883.

Except for the four lots owned by the plaintiff Zea, which, as has been said, the lower court held lie within the corporate limits of the town, the record does not contain descriptions of the various properties of the respective plaintiffs, nor does it show where these properties lie with respect to the disputed boundaries of the town. We understand from the record and briefs that the properties of the plaintiffs were formerly outlots laid off by Stephens, lying outside of the forty-acre tract which he divided into eighty half-acre lots. The controlling issue, then, is whether these outlots are within the proper corporate limits of the town.

The position of the town is that the fixing of municipal boundaries is a legislative function; that its boundaries were fixed by the Act of 1758 whereby 900 acres of land "surveyed and laid off" by Lewis

Stephens were "erected and established" as a town; that these boundaries could be changed only by legislative action, and that no such action has been shown.

The contention of the plaintiff taxpayers is that a reading of the Act of 1758, as modified by the Act of 1799, shows that it was the purpose of the General Assembly to fix the boundaries of the town by incorporating only forty acres of land, embracing the eighty half-acre lots, and excluding the 140 outlots, and that "these boundaries were increased by a valid incorporation by prescription" of the additional territory included within the Larrick survey.

We agree with the position of the town. It is, of course, well settled that the creation of municipal corporations and the fixing of their boundaries are legislative functions. McQuillin, Municipal Corporations, 3d Ed., Vol. 2, § 7.03, p. 258; 37 Am. Jur., Municipal Corporations, § 7, p. 626; Id., § 16, pp. 633, 634; 62 C. J. S., Municipal Corporations, § 38-a, pp. 116, 117.

As is said in 37 Am. Jur., Municipal Corporations, § 16, at pages 634, 635, "Where there is ambiguity in the description of the boundary of a municipality, prevailing usage or custom or contemporaneous construction of such description may be resorted to in determining the boundary, but neither usage and custom nor contemporaneous construction will prevail over a plainly designated boundary line." See also, *Hamilton* v. *McNeil*, 13 Gratt. (54 Va.) 389, 394, 395; *City of Roanoke* v. *Blair*, 107 Va. 639, 644, 60 S. E. 75; McQuillin, Municipal Corporations, 3d Ed., Vol. 2, § 7.09, p. 277.

In its final order the lower court adjudicated that, "the Charter of 1758 and the amendment thereto of 1799, * * * in legal effect established the boundaries of said town * * *, and that said acts properly construed included only approximately forty acres, theretofore surveyed and laid out by Lewis Stephens, Senior, * * * plus an extension of the said forty acres at the north end of the town upon the road leading * * * to Winchester, * * *."

We do not agree with this holding. We think that in plain language the Act of 1758, *supra*, "established" the town on 900 acres and not on forty acres. It will be observed that the act recites that Lewis Stephens is possessed of 900 acres of land near Opeccan, in the county of Frederick, and has surveyed and laid off forty acres into lots of "half an acre each," "numbered from one to eighty inclusive." It further recites that to each of twenty specified lots Stephens "hath annexed" five acres of land, and to each of the re-

maining sixty lots he "hath annexed" ten acres of land, part of the said 900 acres. After reciting that, "All which lots, with the lands annexed thereto, are purchased by different persons who are now settling and building thereon," and who "desire that the same may be by act of assembly erected into a town," it then enacts "That the *said nine hundred acres of land, so surveyed and laid off by the said Lewis Stephens, be, and the same is hereby erected and established a town,* and shall be called by the name of Stephensburg." (Emphasis added.)

While it may "seem strange," as the lower court observed, to have incorporated at that time so large a territory, the power of the General Assembly to do so was recognized. Incidentally, it is interesting to observe here that by an Act of 1761, Woodstock, in the same Frederick county, was established as a town on 1,200 acres. See 7 Hening's Statutes at Large (1756-1763), p. 406.

 Nor do we agree that the effect of the Act of 1799 was to confirm the incorporation of only forty acres in the town of Stephensburg, or to restrict the boundaries of the town to the lots within that acreage.

The title to the 1799 Act states its purpose to be "for adding certain lots to the Town." These lots were specified in the body of the act as being "at the north end of the town * * * upon the road leading from the said town to Winchester, and without the limits thereof as now established." By enactment they were "added to, and made a part of, the town." Since there is no reference to the Act of 1758, whereby the town was incorporated, it is reasonable to assume that that act was not brought to the attention of the General Assembly in 1799. But, in any event, the effect of the Act of 1799 was merely to validate the inclusion of these specified lots within the area of the town. Certainly, there is no indication in its language of a purpose to diminish the area of the town or to contract its boundaries as fixed by the earlier act.

 The main contention of the plaintiff taxpayers is that the boundaries of the town were legally fixed by the Larrick survey of 1884. The lower court did not accept this view, nor do we. In the first place, that contention is at variance with the court's holding that only forty acres were incorporated by the Act of 1758, for according to the Larrick survey the area of the town is stated as containing 180 acres, or approximately four and one-half times that fixed by the lower court.

Moreover, in order to agree with the plaintiff taxpayers' contention, we must find that the statute authorizing this survey (Code of 1873,

ch. LIV, § 1, p. 521, *supra*) empowered the town to alter and change its boundaries by the simple expedient of adopting a survey made by an employed surveyor. The statute, of course, had no such purpose and effect. The General Assembly and not the council of the town had the power to fix its corporate limits.

As we held in *Town of Strasburg* v. *Chandler*, 124 Va. 91, 100, 101, 97 S. E. 313, the evidence afforded by the plan contemplated by this statute (then § 1014 of the Code of 1904), so far as such evidence derives any strength from the statute itself, "relates only to 'boundaries of the lots, streets and alleys'" and not to the "boundary of a town."

In this proceeding we are not called upon to fix the precise boundaries of the town. Our problem is merely to determine whether certain properties of the plaintiffs lie within its boundaries. We find that they do.

For these reasons the judgment appealed from is reversed and a final judgment will be here entered adjudicating that the properties of the plaintiff taxpayers involved in this proceeding are within the corporate limits of the town of Stephens City and subject to the exercise of its jurisdiction, dominion and control.

*Reversed and final judgment.*