Burks, J.,
delivered the opinion of the court.
Want of jurisdiction in the court below of the proceeding by motion in which the judgment complained of here was rendered is assigned by the Bank of the Old Dominion as one of the errors in said judgment.
*534 The entry on the records of said court, 22d July, 1871 , . , / . , , . . , , ’ on which the motion was based, is in these words:
“ The Bank of the Old Dominion v. McVeigh & Cham- . ■ a berlam & al.
“ Judgment, by consent, in favor of the plaintiff for ten thousand seven hundred and sixty dollars, the debt in the declaration mentioned, with interest thereon from the 1st day of January, 1866, till paid, and costs.
“Execution on the judgment to be stayed for ninety days, and in the event of an appeal being obtained and perfected in the case of the Bank of the Old Dominion v. James H. McVeigh & Son & al., decided at this term, then this judgment to await the decision of the court of appeals, and abide the result thereof in the said case; provided the appeal bond in that case be sufficient to secure the amount of both judgments.
“ H. O. Claughton, p. q.
“ Brent & Wattles, p. d.”
Now, if this entry be a judgment at all (and it is insisted by the learned Counsel for the bank that it is), it is a judgment by consent or confession, not absolute, but on the terms and conditions set out in the agreement annexed. In such a case, under the agreement, which is a continuing one, it is competent for the court which rendered it to deal with it in a summary way and see that its terms are complied with. It is said in 1 Tidd’s Practice, 560, that when a judgment is confessed upon terms, in the king’s bench, it being in effect but a conditional judgment, the court will take notice of it and see the terms performed; but when the judgment is acknowledged absolutely, and a subsequent agreement made, this does not affect the judgment; and the court will take no notice of it, but put the party to his action on the agreement.
We do not doubt, therefore, that the corporation court *535 of the city of Alexandria had iurisdiction of the proceed-J .... . ing by motion to modify the judgment under the agreement of the 22d July, 1871, of record, if indeed there any such judgment. .
This brings us to consider the question raised by the petition of James H. McVeigh (who must, on said petition, be treated as a plaintiff i'n error), whether there ever was any such judgment. He insists that there was no such judgment, and that the court erred in treating the entry of the 22d July, 1871, as a judgment at all; that it was only an executory agreement of the parties by. their counsel for a judgment, which in fact was never rendered, and that instead of recognizing and sanctioning it as a judgment as against him, the court should have treated it, in the proceedings which were had, as a mere agreement, and should have given judgment thereon accordingly as of the 8th day of January, 1879.
It would seem to be sufficiently clear that the entry referred to, taken in connection with the record of the case in which.it was made, has the requisite certainty of a judgment as to parties, amounts, dates, &c. The caption, giving the style of the case, plainly describes the plaintiff, but not so the defendants. They are described generally as “ McVeigh & Chamberlain & al.” But as the bill of exceptions shows that the entry was made in said case of “The Bank of the Old Dominion v. McVeigh & Chamberlain,” we may look to the declaration and process in the suit to see who the defendants were. Thus looking, we find the writ commencing the suit was against James H. McVeigh and James Chamberlain, trading under the firm name of “McVeigh & Chamberlain,” and William E. McVeigh. The declaration is against the same parties, and the writ was served on all except Chamberlain, as to whom it was returned not found. The defendants, therefore, referred to in the caption to the entry were the defendants already named, except Chamberlain, he never *536 ^av*n£ been before the court at any time, and the plaintiff, in fact, conceding that he was not embraced as a party in entry of the supposed judgment. The amount recovere<^ ^ recover7 i* be, with interest, corresponds accurately with the amount and interest in the declaration demanded.
the objection urged against considering this entry as a judgment is not so much for uncertainty as for the alleged absence of expression of judicial action. It is essential to a judgment that it be a judicial determination, an adjudication by the court. If this appear, the form is-not so material. Consideratum est per curiam, &c., is the old technical formula and the one generally followed; but a literal observance of it, although advisable, is not indispensable ; language of like import will suffice.
Now, what is meant by this entry: “ Judgment, by consent, in favor of the plaintiff for ten thousand seven hundred and sixty dollars, the debt in the declaration mentioned, with interest thereon from the 1st day of January, 1866, till paid, and costs ” ? It is an order entered by the court in a pending cause, by the consent of the parties, to be sure, but nevertheless an order of the court, it matters-not by whom it was drawn, whether by clerk or counsel, and the language of the order is the language of the court. If it had been intended as a mere agreement of parties for a judgment, the language would have been different. It is not, that judgment is to be, or may be, or shall be rendered by the court, but it is the actual rendition of the judgment itself. And what difference is there in meaning and legal effect between the language employed, “judgment, by consent, for the plaintiff,” &c.? and the usual formula, “ it is considered by the court, by consent of parties, that the plaintiff recover the sum,” &c.? ' The meaning is the same. The term “judgment,” as used, imports judicial action—determination—adjudication—and “judgment, by consent, for the plaintiff for the sum ” (named), is an *537 adjudication that the plaintiff recover that sum. And so it has been considered and treated by the parties and by the corporation court. In the agreement annexed, it styled a “judgment,” on which “ execution is to be stayed, &c.” The motion of the McVeighs in the court below was a motion, in express terms, “to set aside the judgment entered in the cause on" the 22d day of July, 1871, same being a judgment in favor ©f said Bank of the Old Dominion,” and the corporation court acted upon it as a judgment, referring to it as “ the judgment rendered in this court at the July term, 1871.”
Adjudged cases, some of which were cited by learned counsel in argument, in which the question whether particular entries amounted to judgments or not, was presented and decided, are numerous, and the decisions conflicting. We do not deem it necessary to review them, as we are of opinion, for the reasons already stated, that the entry in question here was intended to be a judgment, and has all the essential qualities of a judgment.
The main contention in this case springs out of the agreement already set out, which was annexed to the judgment. The record shows that the bond, called in the agreement an “ appeal bond,” was never given. It is obvious that by the bond styled an “appeal bond” was intended a supersedeas bond, which shouldjoperate to suspend the execution of both judgments, and secure their payment in case of affirmance here of the judgment in the case of “The Bank of the Old Dominion v. James H. McVeigh & Son & al.” The bond which was given was a bond in the penalty of $200 only, and, though not set out in the record, was evidentlysuch a bond as is required on awarding a writ of error without a supersedeas, the condition of which is for the payment of damages, costs and fees. The bond, or such one as the agreement provides for, not having been given, what was the consequence? How were the rights of the parties affected by non-compliance with *538 this provision ? The answer to this question depends on x ... . A r the construction to be given to the said agreement.
On behalf of the bank, it is contended that the execu^0n ^ond was an essential part of the agreement that the judgment should abide the result of the decision by this court, on writ of error, in the case of the Bank of the Old Dominion v. James H. McVeigh & Son & others, and was a condition precedent, the performance of which was necessary to entitle the McVeighs to the benefit of that agreement; and as there was no performance, the judgment became absolute.
On the other hand, it is insisted by the counsel for the McVeighs that the stipulation for the suspension of execution on the judgment for ninety days, and also that the judgment should abide the result of the decision by this court in the other case, was, in each particular, absolute, and the giving of the bond was required as a condition precedent only to the suspension of execution on that judgment while the other case was pending here on writ of error.
As said in the opinion in Talbott v. Richmond & Danville R. R. Co. (3 Va. Law Journal, 486), to ascertain the intent of the parties is the fundamental rule in the construction of agreements; (Canal Co. v. Hill, 15 Wall. 94); and in such construction, courts look to the language em- ■ ployed, the subject matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the circumstances as they viewed them, and so to judge of the meaning of words and of the correct application of the language to the things described. Nash v. Towne, 5 Wall. U. S. R. 689, 699. See also Maryland v. Railroad Co., 22 Wall. U. S. R. 105; Moran v. Prather, 23 Wall. U. S. R. 492, 501.
*539 Guided by these principles, we are of opinion that the construction placed on the agreement by the defendants in error is the proper one. It is the only reasonable Here were two suits pending at the same time, in the same court, between the same parties, presenting the same questions, and depending on the same evidence. After trial, verdict and judgment in one case, with which the ants were dissatisfied, and, for correction of alleged errors, intended to apply to the appellate court, what more natural and reasonable than that it should be agreed between the parties that the decision in one case by the appellate court should be conclusive of the other, and that, pending the litigation in that court, the plaintiff’s rights in the latter case should not be impaired or prejudiced? Hence, that the plaintiff should have immediate judgment in the second case, as in the first, and execution of the judgment should be suspended and await the decision of this court in the other case, provided security was given against loss occasioned by such suspension. Such an arrangement would avoid the expense, delay and vexation attending the trial of one of the cases in the court below and a prosecution of a writ of error in the same case here. And such, we think, was the agreement actually made.
There was judgment for the plaintiff by consent, and there is no doubt that the agreement provides for an unconditional stay of execution for ninety days. “In the event of an appeal being obtained and perfected” in the other case, a further stay is provided for, but it is conditional, as expressed by the concluding words, “ provided, the appeal bond in that case be sufficient to secure the amount of both judgments.” "VVe think, that construing this agreement in reference to the subject matter and in the light of the surrounding circumstances, with a view to discover the intention of the parties, we are warranted in transposing parts of it, so as to read thus: “ Execution on the judgment to be stayed for ninety days, and in the *540 eveu^ 0i^ an aPPea^ being obtained and perfected in the case of the Bank of the Old Dominion v. James H. Mc- & Son et ah, decided at this term, then this judgment t0 abide the result in said case, and await the decision of the court of appeals, provided the appeal bond in that case be sufficient to secure the amount of both judgmeats.” By this transposition—an expedient in the construction of instruments, when not forbidden by the plain meaning, often resorted to in the furtherance of a reasonable and probable intent, and sometimes rendered necessary to avoid conclusions so repugnant to a sense of justice and sound reason as to be not fairly imputable to the parties —the judgment is “ to await the decision of the court of appeals,” that is, as we interpret the language, is not to be enforced while the other case is pending in the court of appeals, “ provided the appeal bond in that case be sufficient,” &c.—this proviso or condition, in its application, being confined to the suspension of proceedings to-enforce the judgment, and having no relation to theagreement that the judgment is “to abide the result” of the decision in the other case.
The agreement thus read expresses, we think, the true meaning of the parties, and that is, that the decision by this court in the case of the Bank v. James H. McVeigh & Son and others, should control the judgment in the other case, and while the former case was pending here, execution and other proceedings to enforce said judgment should be suspended, provided an “ appeal bond”—that is, a supersedeas bond—was given in the case here sufficient to secure both judgments. If no such bond should or could be given (and we do not see how, under the statute, such bond to secure both judgments could be given, Code of 1873, ch. 178, § 13), the hands of the plaintiff would not be tied, nor its rights in any way impaired or prejudiced. Execution at law could have been sued out at any time to subject the personal property of the defendants, or *541 proceedings in equity instituted and prosecuted to subject their lands.
The agreement we are construing was drawn by plaintiff’s counsel, and was doubtless hastily prepared and executed at the termination of the trial in the first case, and probably in the midst of the business of the court. However that may be, it is difficult to believe, that the intelligent counsel for the plaintiff would ever have demanded, or the equally intelligent counsel for the defendants have assented to such an agreement as this is, if now rightly construed by the learned counsel for the plaintiff in error here. If his construction is right, the defendants agreed to confess judgment for a debt of large magnitude, which they denied they owed, and to continue bound by it, unless they performed a condition, which it was practically, if not legally, imposible for them to perform, and that too although it should be authoritatively determined in the manner agreed upon, that they did not owe one dollar of the debt. It is in the highest degree improbable, that the defendants or their counsel so understood the contract when it was entered into. The defendants were under no such stress as to be forced into an undertaking of such a character. They might have proceeded with the trial of the second case, and if verdict and judgment had been rendered against them, they might, by writ of error in that case, have tested the correctness of the decision in the appellate court, as they did in the first case, and with like result. And this course would no doubt have been pursued, if they had not supposed that the same end would have been attained by the agreement made.
Although where the meaning of an instrument is clear, an erroneous construction of it by the parties to it will not control its effect, yet where there is doubt as to the proper meaning of it, the construction which the parties themselves have put upon it is said to be entitled to great con *542 sideration. Railroad Co. v. Trimble, 10 Wall. U. S. R. 367, 377.
Notwithstanding the writ of error was awarded by this cour^ 'n case in 1871, and the plaintiff in error then failed to give such bond as the agreement required, and the case was not decided by this court until 1875, and on the second writ of error, not .until 1876, the plaintiff did not, in the meantime, take, nor has ever taken, any steps to enforce the judgment in the second case, thereby seeming to construe the agreement to mean, as the defendants construed it, that the judgment in the second case was to abide the result of the decision by this court in the first case, whether the bond required by the agreement was given or not.
It is not to be supposed fora moment, under the circumstances of the litigation between these parties, that the plaintiff would have delayed all this time, or even at all, after the failure to give the bond, to prosecute his remedies on a judgment by which the defendants were considered as irrevocably bound. The delay can be reasonably accounted for only, as it seems to us, upon the supposition that it was the agreement and understanding, recognized by both parties, that the judgment confessed in the second case should be controlled by the final decision of this court in the first, and “abide the result thereof.”
Again, as has been said in another case, if there were any doubt as to the construction which should be given to the agreement, that construction should be adopted which would be more to the advantage of the defendants, upon the general ground that a party who takes .an agreement prepared by another, and upon its faith incurs obligations or parts with his property, should have a construction given to the instrument favorable to him; and on the further ground that when an instrument is susceptible of two constructions, the one working injustice and the other consistent with the right of the case, that one should be favored *543 which standeth with the right. Noonan v. Bradley, 9 Wall. U. S. R. 394, 407.
0£ the two constructions put upon the agreement' this case by opposing counsel, the one we have adopted “standeth with the right”; and is consistent with sound reason, as we think, and we are of opinion, upon the whole matter, that there is no error in the judgment complained of here, and that it should be affirmed.
Moncure, P., dissented.
Judgment arrirmed.