## Richmond.

### KNICK AND ALS. v. KNICK.

November 18.

Absent, *Moncure*, P.

1. A party in interest and on the record is not incompetent to testify in relation to a contract to which he is not a party, though one of the parties to the contract is dead, and the other party to the contract is incompetent to testify.

2. Where a written contract is obscure in its meaning, evidence of what is said and done at the time of its execution is competent, not to add to or change it, but to explain it.

This case was heard in Staunton, but was decided in Richmond.

In a case depending in the circuit court of Rockbridge county in the name of William Talley's administrator against said Talley's heirs, a tract of land of one hundred and ninety-three acres was sold by a commissioner in June, 1846, and knocked off to Samuel G. Knick, at the price of $522.48, who gave his three bonds for the purchase money, payable in six, twelve and eighteen months. Samuel G. Knick was the eldest son of Polly Knick, who was one of the children of William Talley, and there was coming to her from her father's estate the sum of $66.29. She was the mother of twelve children, several of whom were sons, and she lived on the land from the time of said purchase until her death in 1878.

In October, 1878, John B. Knick and the other children and grandchildren of Polly Knick, except Samuel G. Knick, filed their petition in said cause, claiming that the land was purchased for their mother, and had been paid for by

her, with the help of her children, except a small amount of $28.06, which was yet due. That since the death of Polly Knick, they are informed that Samuel G. Knick is seeking to have the land conveyed to him as the purchaser thereof; and they pray that a rule may be made upon him to show cause why the land should not be conveyed to all the heirs of Mrs. Knick, and partitioned or sold for division among them.

Samuel G. Knick answered the petition. He denied that he had purchased the land for his mother, or that she had paid for it. He intended it as a home for herself and her children, as long as the children were with her; and this was the understanding between himself and his mother, she consenting that the amount coming to her from her father's estate, which it was then apprehended would not be much, should go towards paying his bond. He filed with his answer an agreement between himself and his mother entered into in July, 1861, when he was about to leave home to go into the army. As the questions in the case have principal reference to this agreement, it is given, and is as follows:

Articles of agreement made and entered into this 19th July, 1861, between Mrs. Polly Knick and Samuel G. Knick, witnesseth, that the said Polly Knick will be in possession of the land, which she now resides upon, provided the said Samuel G. Knick never gets back home, and if he comes back home they will settle their land affair satisfactorily to both parties; and according to this agreement the said Polly Knick gives her bond for fifty dollars.

Given under our hands and seals this, the 19th of July, 1861.

her<br>
POLLY + KNICK, [Seal.]<br>
mark.<br>
SAM'L G. KNICK, [Seal.]

The bond was for $50, payable one day after date, and bore the same date with the agreement; and it was subsequently paid by Mrs. Knick.

Among the witnesses examined for the petitioners were Mary Gutsminger, Sally Clark, John B. Knick, and Andrew T. Knick, who were children of Polly Knick, and parties petitioners in the case, and Joseph S. Phillips. All of these witnesses say they were present when the agreement between Mrs. Polly Knick and Samuel G. Knick was written and executed, and their evidence relates to what was said and done on that occasion; and if admissible evidence clearly showed that Mrs. Knick had paid in great part for the land, and that the bond for $50 was given to cover any balance that might still be due to Samuel G. Knick on that account.

Samuel G. Knick excepted to the evidence of the four children of Mrs. Knick on two grounds. 1st. That they were parties in the cause and interested, and testifying to what passed between Mrs. Knick and himself; and Mrs. Knick being dead he could not testify in the case. 2d. That their evidence tended to vary, contradict or add to the terms of the written agreement. And the evidence of Phillips was excepted to on the second ground.

The cause came on to be heard on the 27th of May, 1879, when the court held, on the first ground of exception, that the four children of Mrs. Knick being parties in interest and parties on the record, were incompetent witnesses in the case, and excluding their evidence, made a decree in favor of Samuel G. Knick; and a commissioner was directed to convey the land to him, upon his payment of the balance of the purchase money. And thereupon John B. Knick and the other heirs of Polly Knick, except Samuel G., applied to a judge of this court for an appeal; which was allowed.

*G. H. Letcher,* for the appellants.

*James G. Field* for the appellee.

BURKS, J., delivered the opinion of the court.

The circuit court, in deciding that the land in contro-versy in this cause is the property of the appellee Samuel Knick, and ordering the same to be conveyed to him on the payment of the balance of purchase money which ap-pears to be owing, on exceptions filed, excluded from con-sideration the depositions of four witnesses, children and heirs at law of Polly Knick, deceased. This appears on the face of the decree appealed from.

If these depositions can be read, they show very satisfac-torily, in connection with the other evidence in the cause, that the appellee has no valid claim upon the land, nor any interest in it except as one of the heirs of his mother, the said Polly Knick. It is true, he was the nominal purchaser of the land, but the evidence, in our opinion, shows that he purchased it for his mother—as a home for her and her numerous family of children; and she resided upon it from the date of the purchase in 1846 till her death a few years ago. Payments towards the purchase were made from time to time partly by the application of her share of the Talley estate, partly by other means acquired by her, and partly by contributions from her children. We think it very prob-able from the evidence, that a considerable portion of the money paid was furnished by the appellee, and this gave him possibly a lien on the land for his advances, or, it may be, a resulting use in it to the extent of the money ad-vanced. And the same may be said of the contributions of the other children made after attaining majority; but they assert no claim on that account. They only claim title by descent as heirs of their mother. And we are of opinion,

without going into a discussion of the evidence, that all claim of the appellee, whether as purchaser, creditor or otherwise than as one of the heirs of said decedent, was extinguished by the written agreement of July 19, 1861, and the subsequent payment by his mother of the bond given to him under that agreement. The evidence would seem to leave no reasonable doubt as to these matters.

But the evidence from which the foregoing conclusions have been drawn includes the rejected depositions, which are perhaps necessary to warrant those conclusions.

It is important therefore to determine whether there was error in excluding the depositions. Two exceptions were filed. The first (in the language of the exception), "on the ground that said deponents are incompetent to testify in this cause. They are all parties in interest and to the record. The transaction, which is the subject of the controversy, was had with Mrs. Polly Knick, who is now dead. This exceptant cannot testify as against said decedent, and the law expressly inhibits the admission of these parties as witnesses against a party whose lips as a witness are sealed by the law."

It was upon this exception (without considering the other), that the circuit court rejected the depositions.

The deponents are children and heirs at law of Polly Knick, and they were certainly interested in the result of the suit and in the cause as parties to the record (*Stein* v. *Bowman*, 13 Peters, 205, 219), and, for these reasons, at common law they were certainly incompetent to testify on behalf of themselves and the other heirs associated with them in the suit. But all disqualification for these causes *merely* have been removed by our statute. A witness is no longer disqualified either by interest in the result of, or by being a party to any action, suit, or other proceeding of a civil nature, at law or in equity, before any court, or before

Knick and als. v. Knick.

a justice of the peace, commissioner or other person having authority by law, or by consent of parties to hear evidence. Such is the effect of the general provision, standing alone. Section 21 of chapter 174, Code of 1873. That section, however, is qualified in its application to certain witnesses by the next succeeding section (22), amended March 21, 1877, and again April 7, 1877 (Acts 1876–77, pp. 184, 185, 265, 266), which provides, among other things, that "where one of the original parties to the contract or other transaction which is the subject of the investigation, is dead, or insane, or incompetent to testify by reason of infancy, or any other legal cause, the other party shall not be admitted to testify in his own favor," &c. The residue of the section need not be copied. The only design and effect of this provision is to except and withdraw from the operation of section 21 witnesses interested in or parties to suits or other proceedings therein mentioned, who are *also* in the category of original parties described in section 22. In other words, a person, though interested in or a party to a suit or other proceeding of a civil nature, is not for that cause *alone* incompetent to testify as a witness. To render such a person incompetent, he must *also* be "one of the *original parties* to the contract or other transaction which is the subject of investigation," &c. So, conversely, though a person be one of such original parties, he is not for that cause *merely* incompetent to testify. To make him incompetent, he must also be interested in the result of the suit or as a party to the record; for, otherwise, he would be a competent witness at common law, and the object of the statute is to remove existing disqualification in most cases, not to create one in any case. See proviso to act approved April 2, 1877 (Acts of 1876–77, p. 266), also *Borst* v. *Nalle and others*, 28 Gratt. 423, 434; *Reynold's Ex'or* v. *Callaway's Ex'or*, 31 Gratt. 436, 439.

The question presented by this exception is substantially

the same considered and decided by this court in *Simmons* v. *Simmons' Adm'r*, at the late term at Wytheville, not yet regularly reported but published in 4 Va. Law Journal, 616.

Distributees of an estate were examined as witnesses on behalf of the administrator in a suit against another distributee, and their competency was objected to here for the first time. They were not parties to the contract or transaction which was the subject of investigation, nor parties to the suit, but they were interested in the result. It was decided (though the objection was untenable also because not made in court below), that they were competent witnesses for the administrator; and in the opinion of the court, it is said, "that disqualification on account of interest is removed by the statute, and if the interested witness was not a party to the contract or other transaction which is the subject of investigation, his *interest merely* does not disqualify *him*, though one of the original *parties* to the contract or transaction, the subject of investigation, be dead, insane, or incompetent to testify by reason of infancy or other legal cause, and for that reason the other *party* is rendered incompetent to testify." And it is further said, "that the correctness of this construction of the statute, if not directly and expressly determined in any previous case, is a necessary deduction from the construction given to the same statute in the numerous decisions of this court heretofore made, many of which are reported." *Martz's Ex'or* v. *Martz's Heirs*, 25 Gratt. 361, is specially referred to "as very nearly, if not quite, a case in point."

As, in our opinion, the circuit court erred in excluding the depositions on the ground taken in the first exception, it becomes necessary to determine whether the second (which was not considered by that court) is any more tenable than the first.

This exception (the second) is to the evidence not only of the deponents named in the first but also of Joseph S.

Knick and als. v. Knick.

Phillips " as illegal, on the ground that it is incompetent to vary, contradict or add to the terms of a valid written instrument by oral testimony." The whole object of the testimony excepted to " (as alleged) " is to show that Mrs. Knick and Sam'l G. Knick did not make the contract set forth in the written memorandum or agreement executed by them on the 19th of July, 1861, but made another and a very different contract."

While it is a general rule, as stated by Judge Allen in *Towner* v. *Lucas' Ex'ors*, 13 Gratt. 705, that "parol evidence will not be received to engraft upon or incorporate with a valid written contract an incident occurring cotemporaneously therewith, and inconsistent with its terms," or as succinctly stated by another (1 Greenl. Evi. § 275), " that parol contemporaneous evidence is admissible to contradict or vary the terms of a valid written instrument," the answer to the objection raised by the exception is, that, in our opinion, the testimony excepted to does not contravene the rule, or if any portion of it does and for that reason should be excluded, enough remains, not liable to any such objection, to justify the conclusions we announced in the first part of this opinion.

It does not, as it seems to us, contradict or vary the terms of the instrument referred to, nor do we understand that it was offered for any such purpose. The writing is very ambiguous, and without the aid of extrinsic evidence, it is very difficult, if not impossible, to give to it any safe or satisfactory construction.

Without going into particulars, it may be said of the testimony in question, in general terms, that it establishes facts and circumstances which serve to explain the true intent and meaning of the instrument without contradicting or varying its language. It shows the surrounding circumstances—the situation of the parties, their relation to each other and to the subject matter of the agreement, and the

object and purpose of both parties in entering into that agreement as avowed at the time it was prepared and executed, and it is not inconsistent with the terms employed in the writing to be construed. On the contrary, it furnishes light by which the court is enabled to discern the true meaning of these terms as the parties used them. Oral evidence to this extent is always admissible in the construction of written instruments where ambiguity exists. See *Talbott* v. *Richmond and Danville Railroad Company,* 31 Gratt. 685, 689, and cases there cited; *West* v. *Smith,* 101 U. S. R. (11 Otto), and cases cited on pp. 263, 271, 272.

Again, a material portion of the testimony relates to the subsequent conduct of the parties, their conversations with each other, and the admissions of the appellee, which show the construction put upon the written agreement by themselves. This testimony was clearly admissible; for, although when the meaning of an instrument is *clear,* an erroneous construction of it by the parties to it will not control its effect, yet where there is *doubt* as to the proper meaning of it, *the construction which the parties have put upon it* is said to be entitled to *great consideration. Bank of Old Dominion* v. *McVeigh,* 32 Gratt. 530, 541, citing *Railroad Company* v. *Trimble,* 10 Wall. 367, 377.

We are of opinion that the second exception, like the first, cannot be sustained, and upon the whole matter that the decree of the circuit court is erroneous and should be reversed.

The decree was as follows:

This cause, which is pending in this court at its place of session at Staunton, having been fully argued but not determined at said place of session, this day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the argument of counsel, is of opinion, for reasons

Knick and als. v. Knick.

stated in writing and filed with the record, that the said decree is erroneous; therefore, it is decreed and ordered, that the said decree be reversed and annulled, and that the appellants recover against the appellee their costs by them expended in the prosecution of the appeal aforesaid here. And this court, now proceeding to render such decree as the said circuit court ought to have rendered, doth overrule the exceptions taken by the defendant Samuel G. Knick, as well as the exception to the competency of Mary Eustminger, Sally Clark, John B. Knick and Andrew Knick as witnesses in the cause, as also the exception to the depositions of those witnesses and Joseph S. Phillips on the ground stated in said last mentioned exception; and on consideration of said depositions and the other evidence, and pleadings, and exhibits in the cause, is of opinion and doth decide, that the said Samuel G. Knick has no valid lien, charge or claim upon or against the land in the petition and proceedings in this cause mentioned, nor any estate, right, title, or interest in or to said land except as one of the heirs of his mother, Polly Knick, deceased, and that such of the petitioners as are heirs and the said Samuel G. Knick are entitled as heirs of said decedent to said land in shares respectively according to the statute of descents in this State, and to a conveyance of the same by proper deed as soon as they have paid the balance of the purchase money due for said land to the administrators of S. McD. Reid, deceased, as shown by the statement of Commissioner J. K. Edmondson filed in the cause April 4, 1874; and this cause is remanded to the said circuit court for such further proceedings to be had therein as may be proper in order to final decree, in conformity with the opinion and decision hereinbefore declared; which is ordered to be certified to the said circuit court of Rockbridge county.

DECREE REVERSED.