## Staunton.

GRUBB AND OTHERS v. BURFORD.

SEPTEMBER 20, 1900.

Absent, Riely, J.

98   553
99   701

98   553
100   725

98   553
e102   687

98   553
103   710

98   553
107   642

1. ASSUMPSIT—*Contract Under Seal—Joinder—Acts of 1898.*—Since the passage of the act of January 25, 1898, (Acts 1897-'8, p. 103,) providing that "in any case where an action of covenant will lie, there may be maintained an action of *assumpsit*" a special count on a sealed instrument may be united with the common counts in an action of *assumpsit.*

2. PLEADING—*Condition Precedent—Averment of Performance—Lease.*—In an action by a lessee against the lessor to recover damages for a refusal to renew the lease, the lessee must aver and prove performance on his part, at the time and in the manner stipulated for, of all that was required of him by the terms of the lease, as a condition of such renewal, or give some valid excuse for his non-performance.

3. WRITTEN CONTRACT—*Ambiguities—Parol Evidence—Parties' Construction.*—In the absence of any ambiguity in a written contract, parol evidence is not admissible to show the construction placed upon it by the parties thereto.

4. EVIDENCE—*Relevancy.*—It is not necessary that evidence shall bear directly upon the point in issue. If it constitutes a link in the chain of proof, or tends to make the question at issue in the particular case more or less probable, it is generally admissible.

5. DAMAGES—*Gains—Speculative Profits.*—Gains prevented by withholding or interfering with property, or by breach of contract, may be recovered if proved; and so may the difference between the contract price of an article and its ascertainable value or cost. But profits depending upon future bargains, or states of the market, are generally not recoverable.

Error to a judgment of the Circuit Court of Botetourt county, rendered October 28, 1899, in an action of assumpsit, wherein the defendant in error was the plaintiff, and the plaintiffs in error were the defendants.

The declaration contained the common counts, and also a special count, on a contract under seal. There was a demurrer to the declaration and to each count thereof, which was over-ruled. The only plea filed was *non-assumpsit*, upon which issue was joined. The other facts sufficiently appear in the opinion of the court.

*Reversed.*

*Cocke & Glasgow*, for the plaintiffs in error.

*Benjamin Haden*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The first assignment of error is to the action of the court in overruling the demurrer to the declaration and to each count thereof.

The ground of demurrer to the whole declaration is that there is a misjoinder of counts. All the counts are common counts in assumpsit, except the last, which is a special count upon, or for, the breach of an agreement under seal. There is no doubt that at common law those counts could not be united in one declaration, and that such misjoinder would have been fatal on general demurrer. But by act of Assembly approved January 25, 1898, (Acts 1897-'8, page 103,) it is provided, "That in any case where an action of covenant will lie, there may be main-tained an action of assumpsit." Under that act, assumpsit can be maintained upon the writing sued on in the special count, as it is clear that an action of covenant would lie upon it.

Since an action of assumpsit will lie upon the cause of action in the last count, as well as upon the several causes of actions in

the other counts, we see no reason why they may not be properly united in one action of assumpsit, as was done in this case. See *Harper* v. *Parson*, 16 Gratt. 64; *Womack* v. *Circle*, 29 Gratt. 192; 4 Minor's Inst. 446-7.

The common counts in the declaration being admittedly good, the demurrer to the declaration as a whole was properly overruled.

This brings us to the consideration of the demurrer to the last count. By the agreement set out in that count, the plaintiff (defendant in error) had leased from the defendants certain iron ore lands and other property, for the period of one year, with the right to renew the lease for a further term, upon certain conditions. One of the grounds of objection to that count is that by it the plaintiff sought to recover damages because he had been ejected from, and deprived of the use of, the leased premises for the second term after he had elected to renew the lease, without averring that he had performed the conditions upon which he was entitled to renew it. The stipulation in the agreement for the renewal of the lease is as follows:

"Provided, that the said lessee, having performed all his covenants in this agreement contained, may at his option renew this lease and continue this letting on the terms and conditions herein set forth for a further term of four years."

The lessee's right to a second term by the express terms of the agreement is made dependent upon his performance of all the things he had covenanted to do during the first term, and he cannot recover damages upon that agreement for the defendant's refusal to renew and continue the lease for the second term, unless he avers and proves performance on his part at the time, and in the manner, stipulated, or gives some valid excuse for his non-performance. *Carroll County* v. *Collier*, 22 Gratt. 302, 308; *Metropolitan Ins. Co.* v. *Rutherford*, 95 Va. 773, and authorities cited.

The plaintiff, among other things, covenanted that he would

move at least twelve thousand tons of ore annually, and as much more as he could obtain satisfactory sale for; that he would mine the premises in a skillful, workmanlike manner, so as to do no injury to them, taking the ore as it came, coarse and fine together, and that he would diligently, and in a workmanlike manner, search for ore not theretofore discovered.

The material averments of the performance of these and his other covenants are as follows: "And the plaintiff further avers that he went to great expense to get out ore from the said mines; he paid in advance large sums of money in opening up new mines on the said lands; he expended large sums of money in preparing to mine the ores as the said contract of lease required in getting together large forces of men for the work; in purchasing mining tools and implements for the said work in opening up new cuts or mine holes; and as a further inducement to get the plaintiff to proceed with the work under the said lease, the said defendants afterwards promised, and agreed, with the plaintiff that the ten months, which were required for preparing the mines for work, should not be counted as a part of the time set forth in the said lease, and that all the money paid out by the plaintiff in repairing the railroad on the said land, and in repairing the mines and in opening up new mines on the said land, should, and would be, returned to the plaintiff by the defendants."

"And the plaintiff avers that, relying upon the said promise of the defendants, he proceeded to repair the defendants' railroad, and the defendants' mines, and to open up new mines on the defendants' lands, and to put the mines in good condition to mine ore profitably, and that he expended in said works a large sum of money—to-wit, the sum of $5,531.90, of which the defendants had notice."

"And the plaintiff further avers that, after he had expended the aforesaid money in getting the said mines in order to get out ore profitably, a man by the name of Carter got up a furnace

trust, with very large capital, said to be $10,000,000, and sought to acquire the aforesaid mines, which were then under lease from the defendants to the plaintiff."

"And the plaintiff further avers, that the said defendants became, and were, very anxious to dispossess the said plaintiff, and to dispose of the said mines to the said furnace trust. And the defendants entered upon a correspondence with the plaintiff, endeavoring to induce him to surrender the lease aforesaid, and stating that they could not afford to allow this opportunity for disposing of the property to pass. They endeavored to cajole the plaintiff by offering their influence to get him employment with the said furnace trust. They also fasely and fraudulently charged that the plaintiff had forfeited the said lease, and that they had a right to re-enter, but they were very careful not to state in what way or for what cause the plaintiff had forfeited the said lease."

These averments show that the plaintiff had done many things which it was his duty to do in the performance of his covenants, but they do not show clearly that he had done them in the manner and at the time they were required to be done by the terms of the lease; and there is no averment at all that he had mined the premises in a skillful and workmanlike manner, so as to do no injury to the premises, or that he took the iron ore as it came, coarse and fine together, or that he diligently, in a workmanlike manner, made search for ore not theretofore developed, or that he had mined twelve thousand tons of ore, and as much more as he could obtain satisfactory sale for during the year; nor does he aver such a state of facts as would show that he had a valid excuse for not performing them.

The averment of the performance of the condition precedent to the right of the plaintiff to renew the lease being insufficient, the demurrer to that count ought to have been sustained.

During the progress of the trial, parol evidence of the construction which the parties had placed upon the written agree-

ment sued on was allowed to go to the jury. This, we think, was error, as there is no such ambiguity in the writing as would render such evidence admissible. *Bank* v. *McVeigh*, 32 Gratt. 530, 541; *Knick* v. *Knick*, 75 Va..12, 20; *Chicago* v. *Sheldon*, 9 Wall. 50, 54; *Winchester* v. *Glazier* (Mass.), 25 N. E. Rep. 728. The court seems afterwards to have reached the conclusion that there was no ambiguity in the agreement, and that it must speak for itself, but failed to exclude the evidence theretofore admitted upon that point.

The lease for the specular ore mine ought, we think, to have been admitted in evidence. The plaintiff had introduced proof to show that the lease of July 1, 1897, the writing sued on, had been modified by a subsequent verbal agreement. The defendants denied this, and introduced evidence to sustain their denial. Whether there had been such modification, was a material fact in the case. The lease as to the specular ore mine referred to the former lease, and expressly provided that nothing in the latter lease should in any way interfere, or conflict, with the meaning and purport of the lease of July 1, 1897 (the lease sued on). If there had been any parol change in the terms of the former, it is very probable that the latter lease would not have referred to it, as was done, without mentioning a modification in it, which, if made, was a most material and important one. The failure to mention it was certainly a circumstance which tended to show that no such modification had been made. It is not necessary that evidence shall bear directly upon the point in issue, if it constitutes a link in the chain of proof or tends to make the question at issue in the particular case more or less probable, it is, as a general rule, subject to some exceptions, admissible. *Schuchardt* v. *Allen*, 1 Wall. 359; *Hanriot* v. *Sherwood*, 82 Va. 1; 1 Wharton's Ev. sections 20, 21.

Witnesses were allowed to testify as to the profits which the plaintiff would have made out of his lease if he had been permitted to hold and mine the property for the second term.

Their estimates for the most part were purely conjectural. One of them (Mr. Burnett) was asked: "What do you think would be a reasonable estimate of the profits?" His answer was: "There is two ways I would have to state that. With a limited capital, and working the mine upon a credit, it would be less than if a man was working the mines with ample capital, it would be a great deal more, I think; but with an output of five cars a day, and counting 80 cents for mining and royalty, which is, I think, from my experience, about the expenses of mining ore, would leave 20 cents clear, or $4 a car, and five cars per day would be $20. It would take fifty men to raise those five cars, say at a dollar a day, at the present wages. Do I understand that you want the profits from the whole thing?"

Q. "Yes, sir."

A. "These fifty men would spend in the commissary $25 a day—they always spend one-half, sometimes more—and on that commissary they generally make 50 *per cent.*, and that would put this down to $40, and that to the $25 would make $30 for shipping five cars a day. Now, from my experience, that could be done easily, and with a great amount of capital being invested in the running of it, and with ample capital like the company has got that has hold of it now, I could probably make five times that allowance. I think that could be done easily."

It was not shown that the plaintiff had made a contract for the sale of the iron ore at $1 per ton, or at any other price, during the period the lease was to run. Whether the plaintiff could get a purchaser for the ore at a paying price during the lease, or the plaintiff's employees would purchase their supplies from his commissary, if he had one, where they were required to pay 50 *per cent.* profit, is purely conjectural. Evidence of that character is clearly inadmissible.

In ascertaining damages where there is an interference with, or a withholding of, property, or a breach of contract, the gain prevented, if provable, may be recovered.

Profits, which are the difference between the agreed price of something contracted for and its ascertainable value or costs, are recoverable, as in the case of the *Alleghany Iron Co.* v. *Teaford*, 96 Va. 372. But where the profits are dependent upon future bargains or states of the market, they are not, as a general rule, subjects of recovery. *Newbrough* v. *Walker*, 8 Gratt. 16; *Peshine* v. *Shepperson*, 17 Gratt. 472, 486; 1 Sedgwick on Damages, sections 174, 176.

There are other assignments of error, but it will not be expedient to pass upon them now. They are, for the most part, to the action of the court in giving and refusing instructions, and as the case will have to be remanded for a new trial and new pleadings, we cannot foresee how far, if at all, those points may arise again in the new state of pleadings and evidence.

The judgment must be reversed, the verdict set aside, a new trial awarded, and the cause remanded, with leave to the plaintiff to amend his declaration, and the cause be proceeded with in a manner not in conflict with the views expressed in this opinion.

*Reversed.*