**Richmond.**

GLENN v. AUGUSTA PERPETUAL BUILDING AND LOAN CO.

NOVEMBER 21, 1901.

Absent, Harrison, J.

1. TRUSTS AND TRUSTEES—*Impediments to Fair Sale—Duty of Trustees—Rights of Beneficiary.*—It is the duty of a trustee, before making sale of the trust subject, to apply to a court of equity for its aid, whenever necessary to remove any impediments in the way of a fair execution of his trust; to remove the clouds, if any, on the title; to ascertain the exact amount secured, and all prior encumbrances; and to do whatever else may be necessary to effect a sale to the best possible advantage. If the trustee fails to discharge this duty, the beneficiary may invoke the aid of a court of equity for that purpose.

2. DEEDS—*Description—Sale in Gross—Boundaries.*—Whether a particular parcel of land is a part of a larger boundary, which was sold in gross, is a question of fact unaffected by the circumstance that the larger tract was sold in gross.

3. DEEDS—*Description—General and Particular—Repugnancy.*—If there be more than one description of a tract of land in a deed and the descriptions do not agree, that one is to be adopted which is the most certain; and if there be a repugnance between a general and a particular description, the latter will control.

4. CONSTRUCTION OF WRITTEN INSTRUMENTS — *Ambiguity — Acts of Parties.*—If the meaning of an instrument be doubtful, evidence of the acts of the parties under it may be received to show intent.

Appeal from a decree of the Circuit Court of Augusta county pronounced June 22, 1901, wherein the Augusta Perpetual Building and Loan Co. was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case

*Curry & Glenn*, for the appellant.

*Ker & Kerr*, for the appellees.

WHITTLE, J., delivered the opinion of the court.

This is a controversy over the ownership of 20 acres of woodland, the extreme eastern portion of a farm situated in the county of Augusta near the city of Staunton, formerly known as "Belle Fonte." The sole question involved is whether or not that tract was embraced in a deed of April 29, 1893, from Elder and Patrick, trustees, to John Kroder.

Mrs. Elizabeth V. Harman, being the owner of the "Belle Fonte" farm, which contained originally 359 acres and 30 poles, on September 24, 1884, sold and conveyed 65 acres, a part thereof, to John A. Harman, trustee.

A plat and survey, made a part of the record, shows that this 65-acre tract, designated as lot No. 3, completely cuts off and separates the twenty acres of woodland, described as lot No. 4, from the residue of the tract.

By deed of June 25, 1890, Mrs. Harman conveyed all the "Belle Fonte" farm except lot No. 3, to the Staunton Land Company, and that company, to secure the deferred instalments of the purchase money, conveyed the land to Elder and Patrick, trustees.

The purchase money bonds were assigned to appellee, the Augusta Perpetual Building and Loan Company. Default was made in the payment of these bonds, and, by direction of the assignee, the trustees made the sale and conveyance which is now the subject of enquiry.

The advertisement, after first referring to the property as the "Belle Fonte" farm, states that "There are, according to a recent survey, about 274 acres of land in the tract." It appears,

from the plat, that lots No. 1 and No. 2 contain *274 acres and 30 poles.*

At the sale John Kroder became the purchaser, and the conveyance to him described the property as: "That certain tract or parcel of land, situate in the county of Augusta, about one mile east of the city of Staunton, known as the "Belle Fonte" farm, containing, according to a recent survey, 274.3 acres, which quantity is to be diminished, nevertheless, by a small parcel or lot, on which the Kroder Brass Works are located, and more fully described in a deed from the Staunton Development Company and Staunton Land Company to John Kroder. * * * * * The said land embraced in and conveyed by the present deed is nearly all of the land that was conveyed by Elizabeth V. Harman to the Staunton Land Company, * * * * * * and is nearly all of the land that was conveyed by the said Staunton Land Company to the parties of the first part."

The land was reconveyed by Kroder to the trustees, Elder and Patrick, in trust to secure the unpaid purchase money. Afterwards Kroder and wife conveyed lot No. 2, containing 200 acres, to William Glenn, and on March 8, 1898, Elder and Patrick, trustees, conveyed to Lizzie T. Glenn, as appellee insists, lot No. 1, containing 74 acres and 30 poles, which they describe as follows: "A parcel containing about 70 acres and 30 poles, lying on the north side of the Staunton and New Hope road, except a parcel of about 4 acres, on which the Kroder Brass Works were located."

Lizzie T. Glenn subsequently became the purchaser of the excepted 4 acres, which, added to her former purchase, made *74 acres and 30 poles, the exact area of lot No. 1.*

On January 4, 1894, Elizabeth V. Harman conveyed to R. S. Turk the 20 acres of woodland in dispute. The Augusta Perpetual Building and Loan Company filed a bill against Turk, the heirs of Mrs. Elizabeth V. Harman, who in the meantime

had died, and Elder and Patrick, trustees, to remove the cloud cast upon the title to the 20 acres by the deed from Mrs. Harman to Turk, and to subject the property to sale to satisfy the balance due on the debt secured by the trust deed from the Staunton Land Company to Elder and Patrick, trustees.

Upon petition, Lizzie T. Glenn was admitted a party defendant, and leave was granted her to file a demurrer and answer to the bill. In her answer she denied that Elder and Patrick, trustees, sold and conveyed only 274 3-10 acres of the "Belle Fonte" farm to Kroder, under whom she claims, but insists that the whole farm, with the exception of the brass works lot, was sold and conveyed to him; that the sale was in gross and not by the acre. She denied the right of Mrs. Harman to convey the 20 acres to Turk, and also denied its liability to the lien asserted by the plaintiff.

She then undertook to trace her title to the lot, maintaining that she purchased the same and that it was embraced in the deed from Elder and Patrick, trustees, to her of March 9, 1898.

The cause was referred to a commissioner to ascertain the state of the title to the 20-acre lot and whether or not it was subject to the lien asserted by the plaintiff.

The finding of the commissioner was adverse to appellant, Lizzie T. Glenn, and she excepted to his report, but her exceptions were overruled, the report confirmed, and the land decreed to be sold to satisfy the plaintiff's lien.

From that decree this appeal was allowed.

Upon the demurrer appellant challenges the jurisdiction of a court of equity, and yet she complains of not having been made a party to the suit, and in her petition asking to be admitted as a defendant, she avers that she "is without remedy save in a court of equity, where alone such matters are properly cognizable."

There can be no serious question as to the jurisdiction of a court of equity of this cause. Indeed, it would have been im-

proper for the trustee to have exposed the property to sale without first having removed the cloud cast upon the title by the adverse claim of appellant and the deed from Mrs. Harman to Turk.

The language of Moncure, J., in *Rossett* v. *Fisher*, 11 Gratt., 499, reaffirmed in *Preston* v. *Stuart*, 29 Gratt., 303, may be appropriately quoted in this connection: "He (the trustee) is 'bound to bring the estate to the hammer,' as has been said by Lord Eldon, 'under every possible advantage to his *cestui que trust*,' and he should use all reasonable diligence to obtain the best price. Hill on Trustees, 479, and the cases cited. He may and ought, of his own motion, to apply to a court of equity to remove impediments to a fair execution of his trust; to remove any cloud hanging over the title, and to adjust accounts, if necessary, in order to ascertain the actual debt which ought to be raised by the sale, and the amount of prior incumbrances."

A trustee failing in that duty, the right of a *cestui que trust*, the principal and beneficiary, to invoke this equitable jurisdiction cannot be doubted. As remarked, the contention of appellant is that the sale by the trustees to Kroder was a sale in gross and not by the acre, and authorities in great number have been cited to show that in such cases the contract is one of hazard in which the vendor and vendee take the risk of excess or deficiency in the land sold.

But that familiar principle has no application to this case. "Where a specified tract of land is sold for a gross sum the boundaries of the tract controls the description of the quantity it contains; and neither party can have a remedy against the other for an excess or deficiency, unless it is so great as to furnish evidence of fraud or misrepresentation. But this rule does not apply to a case where the mistake is in the boundaries of the tract sold and not in the quantity of acres it contains." Tyler on Boundaries, 337.

The question to be determined is not whether the land *sold* to Kroder contained more or less than was supposed by the parties, but whether the 20 acres of woodland were *sold at all.* A very careful consideration of the record leads unmistakably to the conclusion that this lot was not embraced, or intended to be embraced, in that sale. The advertisement informed the public that *one tract, not two tracts,* and *a part,* not *the whole,* of the "Belle Fonte" farm would be sold, and gave the quantity of land contained in lot No. 1 and lot No. 2, as what was to be offered. The language employed in the advertisement and deed to Kroder was apt and appropriate as applied to lots No. 1 and No. 2, but impossible of application to lot No. 4—the land in controversy—a tract not contiguous to, but separate and located nearly a half mile distant from, the premises described.

The theory of appellant is, that lot No. 4, having been originally a part of the "Belle Fonte" farm, passed under the general language of the advertisement, that the trustee would sell "that certain tract or parcel of land * * * * * * known as "Belle Fonte' farm."

But it must be observed, that this general description was followed by a more detailed and particular description, which plainly shows that all the "Belle Fonte" farm was not intended to be embraced.

While the sale was in gross, the area was given as 274 3-10 acres, and this significant language was used, the land "embraced in and conveyed by the present deed is nearly all of the land that was conveyed by Elizabeth V. Harman to the Staunton Land Company, * * * * * * and is nearly all of the land that was conveyed by the said Staunton Land Company" to Elder and Patrick, trustees.

It is a canon of construction that words of particular description will control rather than general terms of description, where both cannot stand together.

The rule is thus stated by Ruffin, C. J., in *Den. v. Graham,*

27 Amer. Dec., 226: "There is but one principle applicable to questions of this sort. If there be but one description in the deed, that is to be strictly adhered to. If there be more than one, and they turn out upon evidence not to agree, that is to be adopted which is most certain."

"Where there is a repugnance between a general and a particular description in a deed, the latter will control." 2 Devlin on Deeds, secs. 1038-9.

There is another test, which, when applied to the facts of this case, is most persuasive in arriving at the true intention of the parties, and that is: Neither John Kroder, the original purchaser, nor the appellant, ever demanded or took possession of or exercised any acts of ownership or control whatever over the land in controversy; and the rule is, that "Where the meaning of an instrument is doubtful, evidence of the acts of the parties may be admitted to show the intent." 2 Devlin on Deeds, sec. 840; *Bank* v. *McVeigh*, 32 Gratt., 530, 541; *Knick* v. *Knick*, 75 Va., 12, 20; *Grubb* v. *Burford*, 98 Va., 553, 558; and *King* v. *N. & W. Rwy. Co.*, ante p. 625.

It is apparent that the conclusion reached by the trial court in this cause was correct, and its decree should be affirmed.

*Affirmed.*