# Staunton.

## CITY OF ROANOKE AND OTHERS v. BLAIR.

September 12, 1907.

REHEARD January 16, 1908.

1. EVIDENCE—*Construction of Writings—Extrinsic Evidence.*—Written instruments are to be construed by the terms used therein, if plain and intelligible. Extrinsic evidence is not admissible for the purpose of adding to, detracting from or in any way varying the plain meaning of the instrument itself. In construing a writing, extrinsic evidence may, as a rule, be admitted only for the purpose of explaining a latent ambiguity, or of applying ambiguous words to their proper subject matter. Words of a definite legal significance, or which have a well defined primary meaning, are to be understood as used in such sense, unless there appear in the writing a manifest intention of using them in a different sense.

2. BOUNDARIES—*Calls—"East"—Straight Lines.*—The word "East," when used in describing a boundary, means "due East," unless other words are used qualifying that meaning; and where a call is from one point or monument to another, the line is presumed to be a straight line, unless a different line is described in the instrument.

3. STATUTE—*Construction—Unambiguous Language.*—If the language of a statute is free from doubt and ambiguity, the same strictness is to be applied in its construction as is applied in construing grants and contracts between private persons.

4. APPEAL AND ERROR—*Effect of Appeal on Rights of Parties not Appealing.*—Under the statutes of this state and the rule of this court, the rule of decision is that where the parties stand on distinct and unconnected grounds, where their rights are separate and not equally affected by the same decree or judgment, the appeal of one will not bring up for adjudication the rights or claims of the

others. But where the parties appealing and those not appealing stand upon the same ground, and their rights are involved in the same question, and equally affected by the same judgment or decree, this court will consider the whole case, and settle the rights of the parties not appealing as well as those who bring up their case by appeal.

Appeal from the Corporation Court of the city of Roanoke. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*Robertson & Wingfield, Robertson, Hall & Woods, Berkley & Bryan, Hart & Hart, C. B. Moomaw, C. A. McHugh* and *S. Hamilton Graves,* for the appellants.

*Robert E. Scott,* for the appellee.

Buchanan, J., delivered the opinion of the court.

The appellee instituted this suit to subject certain lots to the payment of a judgment which she alleged was a lien thereon.

It is conceded that, if the lots were embraced within the corporate limits of the city of Roanoke, as defined by an act approved February 3, 1882, (Acts 1881-2, Ch. 57, p. 52), they are not subject to the lien of the appellee's judgment. The first question, therefore, to be considered is whether or not the lots were within the city limits as defined by that act.

The boundary line of the city nearest the lots in question is described as follows in the act: "Thence with said Rorer and John M. Shaver's line north to the Norfolk and Western Railroad; thence east to the lands of Q. M. Word; and thence to the line of H. S. Trout, R. B. Moorman and E. H. Engle."

There is no dispute as to the point called for on the line of

the Norfolk and Western Railroad, nor as to the point called for in the line of Trout, Moorman and Engle; but the controversy between the parties is as to the proper location of the line between those points. These lines were never surveyed, so far as the record shows, until after the institution of this suit. The appellee insists that, under a proper construction of the act, in the light of the contemporaneous construction placed upon it by certain officials of the city and of the county of Roanoke, and of the understanding of persons owning lands adjoining or near the line in controversy, the corporate line ran from the admitted point on the Norfolk and Western Railroad, along the line of the railroad to a point where the lands of Word and Trout corner, and from that corner to the admitted point where the lines of Trout, Moorman and Engle corner; and the corporation court so held.

The contention of the appellants is that there is no ambiguity in the language of the act defining the boundary of the city between the admitted corner on the Norfolk and Western Railroad and the admitted corner of Trout, Moorman and Engle, and no difficulty in applying that language to its subject matter; and that the line runs a due east course from the railroad corner to Word's line, and from the point where it strikes his line to Trout, Moorman and Engle's corner.

It is well settled, as a general rule, that a written instrument must be construed by the terms used therein, if plain and intelligible; that extrinsic evidence is not admissible for the purpose of adding to, detracting from, or in any way varying the plain meaning of the instrument itself; that, in construing a writing extrinsic evidence may, as a rule, only be admitted for the purpose of explaining a latent ambiguity, or of applying ambiguous words to their proper subject matter; and that words of a definite legal significance, or which have a well defined primary meaning, are to be understood as used in such sense, unless there appear in the writing a manifest intention of using them

in a different sense. *Findley* v. *Findley,* 11 Gratt. 434, 437-8; *Price* v. *Harrison,* 31 Gratt. 114, 118: *Bank* v. *McVeigh,* 32 Gratt. 530, 541; *Knick* v. *Knick,* 75 Va. 12, 19-20; *Nye* v. *Lovitt,* 92 Va. 710, 24 S. E. 345, and cases cited; *Sherwood* v. *A. & D. Ry. Co.,* 94 Va. 291, 301, 26 S. E. 943; *Grubb* v. *Burford,* 98 Va. 553, 557, 37 S. E. 4; *Watts* v. *Newberry, ante,* p. 233, 57 S. E. 657, 1 Va. App. 381; Cooley's Const. Lim., pp. 91-94.

Let us apply these rules of construction to the language of the calls of the disputed line. The first call in that line is, "thence east to the lands of Q. M. Word." The word or term "east" has a well established legal meaning, and means due east unless other words are used, qualifying that meaning. Devlin on Deeds, sec. 1035; *Dogan* v. *Searight,* 4 H. & M., 131; 5 Cyc. 875. There is nothing in the call to indicate that it was not intended to have its usual meaning; nor does the use of that word in other parts of the description of the boundary line of the city show satisfactorily that it should have a different meaning.

But if "east," as used in the act, meant "eastwardly," as insisted by the appellee, there was nothing in the call or in the act which furnished any authority for establishing a curved or crooked line as was done, for where a call is from one point or monument to another, unless a different line is described in the instrument, the line is presumed to be a straight line. See 5 Cyc. 876, 878; *Smith,* v. *Davis,* 4 Gratt. 50; *Marlow* v. *Bell,* 13 Gratt. 531; *Tucker* v. *Saterthwaite,* 123 N. C. 511, 31 S. E. 722.

The counsel of appellee admit that a strict construction of the act would seem to demand that the line wherever established should be a straight line, and insist that it will be straight if run from the railroad corner to Word's and Trout's corner; but to so establish the line would not only violate the terms of the call, but ignore the contemporaneous construction relied on to

justify the court in departing from the language of the call. The line as established by the court in no respect conforms to the call. It is not a straight line running east or eastwardly, but is a curved or irregular line, running with the lands of the Norfolk and Western Railway Company. By running a straight line due east from the railroad corner to Word's line, all the requirements of the call are satisfied.

But it is insisted by the appellee that the same strictness is not observed in construing acts of the general assembly in forming counties and municipalities as in construing grants and contracts between private individuals. The case of *Hamilton v. McNeil*, 13 Gratt. 389, is cited and relied on to sustain this contention.

The controversy in that case involved the true location of the boundary line between the counties of Pocahontas and Pendleton. It was doubtful from the language of the act defining the boundary line between the counties, whether the call for beginning "on the top of the Alleghany mountain, the northwest side of the line of the county of Pendleton," would not require that the beginning should be at some point on the main Alleghany mountain, as contended by one party, or would be satisfied by beginning at a point on a mountain lying west of the main Alleghany, as contended by the other party. There being this doubt, the court adopted that construction which was in accord with the general policy of the legislature, as evinced by various acts before and afterwards enacted to establish and preserve the main Alleghany mountain as the line between adjacent counties, and was in accord with "the contemporaneous exposition thereof" (the act) "by the courts and other authorities of Pocahontas county, in exercising immediately after its passage exclusive jurisdiction over said territory without question from any quarter; by the complete surrender of such jurisdiction by the courts and authorities of Pendleton county; by its recognition by the general assembly in repeated acts of sub-

sequent legislation; by the representation of county boundaries
on maps prepared and published under the authority of the
legislature and in conformity with the provisions of laws re-
quiring the exterior boundaries of the counties to be laid down
by actual survey, or by reference to one or more actual surveys,
and strict accuracy to be observed in denoting the true position
of the corners of adjacent counties; and by its universal ac-
ceptance as the true construction by the people generally, from
the passage of the act until the origin of the present litigation.

If it be conceded that the charters of towns and cities, with
their comparatively small territorial area, should be construed
with the same liberality as acts forming new counties, there is
nothing, as it seems to us, in the rule laid down in that case
which would justify a court in departing from the language of
the act under consideration upon the facts of this case. In
that case the language was ambiguous; in this it is not. In
that case there was a well recognized public policy which it was
the court's duty to uphold, unless it was manifest from the
act that the legislature intended to depart from that policy; in
this case there is no question of public policy involved. In
that case, the contemporaneous construction placed upon the
act by the counties, the public, and especially by the general
assembly, was such as to leave no room for doubt as to its in-
tention; in this case the general assembly has not manifested
its intention by any subsequent act, nor is the evidence of the
contemporaneous construction placed upon it so clear and satis-
factory as the evidence of contemporaneous construction in that
case, though the weight of evidence upon that question is in
favor of the location of the disputed line as claimed by the ap-
pellee, and might perhaps be sufficient to sustain the conclusion
of the trial court if the language of the act had been ambiguous
and there had been some legislative policy to be upheld.

It follows from what has been said, that we are of opinion
that the true boundary line between the city of Roanoke and

the county of Roanoke (at the time the charter of that city was amended, on the 30th of January, 1890), from the point on the Norfolk and Western at Shaver's crossing to the point where the lands of Trout, Moorman and Engle corner, ran as follows, to-wit: From the point on the Norfolk and Western Railroad at Shaver's crossing a due east line to the southern line of the lands known in the bill and proceedings as Q. M. Word's land; thence in a straight line to the corner of Trout, Moorman and Engle; that the judgment of the appellee is not a lien upon the lands sought to be subjected in this suit; and that the trial court erred in holding that it was.

The decree appealed from must be reversed, and the appellee's bill dismissed.

ON REHEARING, JANUARY 16, 1908.

BUCHANAN, J.

After the opinion of the court had been delivered and a decree dismissing the bill generally had been entered, the appellee, Gertrude Blair, who had filed the bill, moved the court to set aside the decree dismissing it generally, because she was seeking by her suit to subject lands to the payment of her judgment outside of the corporate limits of the city of Roanoke as defined by the said act of assembly approved February 3, 1882; that a decree be entered dismissing the bill only as to the appellants who had no interest in the lands sought to be subjected lying outside of the corporate limits of that city, as defined by that act and construed by this court; and that the decree appealed from in all other respects be affirmed.

When the cause was heard, the oral argument was directed almost, if not entirely, to the question as to the true location of the boundary lines of the city, as defined by the act of February 3, 1882, and this court did overlook the fact that the

complainant was seeking to subject lands to the payment of her judgment lying outside of the limits of the said disputed boundaries, and erred in dismissing the bill generally. That decree must, therefore, be set aside.

We are of opinion, however, that the bill should not only be dismissed as to the appellants who have no interest in the lands sought to be subjected lying outside of the disputed boundaries, but should be dismissed as to all the defendants who had no interest in the lands not lying within the disputed boundaries, although some of them did not appeal from the decree complained of.

Section 3469 of the code provides that every appeal shall be docketed at the place of session where it is to be heard, and that "the clerk of the said court shall issue a summons against the parties interested, other than the petitioners, that they may be heard, and also issue any supersedeas that may be awarded."

By section 3485 of the code it is provided that "the appellate court shall affirm the judgment, decree or order, if there be no error therein, and reverse the same, in whole or in part, if erroneous, and enter such judgment, decree or order as the court whose error is sought to be corrected ought to have entered."

Rule VIII of the court (formerly Rule IX) provides that, "in any appeal, writ of error or supersedeas, if error is perceived against any appellee or defendant, the court will consider the whole record as before them, and will reverse the proceedings, either in whole or in part, in the same manner as they would do were the appellee or defendant to bring the same before them, either by appeal, writ of error or supersedeas, unless such error be waived by the appellee or defendant, which waiver shall be considered a release of errors." Rules of Court, 106 Va. vii.

Under these provisions of the code and this rule of the court, the rule of decision as established by the practice and the cases is stated as follows in *Walker's Ex'or* v. *Page,* 21 Gratt. 636,

652, viz.: "Where the parties stand upon distinct and unconnected grounds, where their rights are separate and not equally affected by the same decree or judgment, then the appeal of one will not bring up for adjudication the rights or claims of the others. *Tate* v. *Liggat & Mathews,* 2 Leigh 84, 107. But where the parties appealing and the parties not appealing stand upon the same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment, this court will consider the whole case and settle the rights of the parties not appealing as well as those who bring up their case by appeal. *Lewis* v. *Thornton,* 6 Munf. 87, 97; *Lenow* v. *Lenow,* 8 Gratt. 349; *Liggat & Mathews* v. *Morgan,* 2 Leigh 84; *Purcell* v. *McCleary,* 1 Gratt. 246." *Saunders* v. *Griggs,* 81 Va. 506; *Alexander* v. *Alexander,* 85 Va. 353, 7 S. E. 335, 1 L. R. A. 125; *Nicholson* v. *Gloucester Charity School,* 93 Va. 101, 103, 24 S. E. 899.

In the case under consideration, all the defendants claiming an interest in the land sought to be subjected within the disputed boundaries stood, as to that land, upon the same ground, their rights were involved in the same question and equally affected by the decree. If the lands in the disputed boundaries were within the corporate limits of the city of Roanoke, as defined by the act of February 3, 1882, then complainant's judgment was a lien upon them; otherwise it was not.

We are of opinion, therefore, that the complainant's bill should be dismissed as to all such defendants.

We are further of opinion that there is no other error in the decree, and that the same in all other respects should be affirmed.

*Reversed.*