# CHARLESTON.

NAPIER *et al.* v. NORTHLAND COAL CO.

Submitted April 1, 1924.  Decided September 30, 1924.

1. DEEDS—*Manifest Omission in Description may be Supplied by Construction, Where Instrument Furnishes Sufficient Data.*

   Where a deed or other writing purporting to transfer title to real estate, applied to the subject-matter, shows a manifest omission in the description, and there is sufficient data furnished by the instrument to supply the omission, it may be supplied by construction.  (p. 250).

   (Deeds, 18 C. J. § 68.)

2. ESTOPPEL—*Direct Interest Essential to Estoppel in Pais Against Asserting Title to Real Estate.*

   To constitute estoppel in pais against one asserting title to real estate, it is necessary that the party sought to be estopped at the time of the alleged estoppel was vested with a direct and immediate interest in the subject-matter.  (p. 253).

   (Estoppel 21 C. J. § 157.)

   NOTE:  Parenthetical references by Editors, C. J.—Cyc.  Not part of syllabi.

Appeal from Circuit Court, Wayne County.

Suit by R. L. Napier and others against the Northland Coal Company.  From a decree dismissing their suit, plaintiffs appeal.

*Reversed and remanded.*

*Vinson, Thompson, Meek & Renshaw,* and *Charles W. Ferguson,* for appellants.

*Riggs & Douthitt,* for appellee.

LITZ, JUDGE:

The plaintiffs appeal from a decree of the circuit court of Wayne county dismissing their suit for the partition of a mineral estate in land and an accounting for waste of the common property by the defendant.

James M. Ross, Sr., the owner of 70 acres of land in Wayne county, on January 12, 1872, executed to his daughter Julia

Ann Napier a paper writing for the alleged purpose of conveying, subject to reservations, an estate therein to her for life and remainder to her heirs. This instrument, signed, sealed and acknowledged as a deed, follows:

> "This deed made and entered into this the 12th day of January, 1872, between James M. Ross Sr. of the first part and Juliann Napier of the second part, both of the County of Wayne and State of West Virginia, bounded as follows:
>
> "Beginning at the mouth of the Bridge Branch on a stake; thence running up said branch with the line between said Ross and David Sellards to a stake; thence with said branch up to a corner of a thirty acre survey made by said Ross on a beech, whiteoak and gum; thence to a gum and hickory corner of a 55 acres survey made by said Ross; thence to two white oaks; thence to a white oak on a hillside; thence to a maple and beech near a drain corner to the old survey; thence with the old line down the hill, crossing the road to a stake on the bank of 12 Pole Creek below Jaret Peter's; thence with the meanders of said Creek up to the beginning corner so as to include all the land that said Ross owns east of said creek, said Ross of the first part reserves 6 acres of the cleared land in the old field his natural life time for the sustenance of himself and Anna, his wife, the said James M. Ross of the first part *to* give and bequeath unto his daughter, Juliann Napier of the second part, a certain tract or parcel of land lying and being in the county of Wayne and State of West Virginia, containing seventy acres, the same more or less with the exception of half the mineral interest with all of its appurtenances to her her life time and then to her heirs to have and to hold forever.
>
> "Whereunto I have set my hand and seal this day and year above written.
>
>                    "JAMES M. ROSS (SEAL)"

It was recorded January 20th, 1872, in the county court clerk's office of Wayne county.

Thereafter the said James M. Ross, Sr., executed and delivered to Julia Ann Napier another paper, to-wit:

"This Deed made and entered into this 7th day of March, 1874, between James M. Ross, Sr., of the first part and Julian Napier of the second part, both of the County of Wayne and State of West Virginia, I James M. Ross of the first part do give and bequeath to my daughter Julian Napier of the second part half of the minerals interest belonging to Seventy Acres of land that I first deeded her according to the *meets* and bounds of the first Deed whereunto I have set my hand and seal the day and date first above written.

"James M. Ross, Sr. (Seal)"

This document, also acknowledged, was recorded on July 6, 1874.

Julia Ann Napier, claiming under the first writing, immediately after its execution assumed exclusive possession and control of the 70 acres of land, and with her family and tenants continued to hold and occupy it to the time of her death, January 1, 1921.

By deed dated February 18, 1890, she and her husband, John H. Napier, conveyed to S. S. Vinson the coal, natural gas, oils and minerals in, on and underlying this land, described as, "Being the same lands that J. M. Ross deeded to said Julia Ann Napier," by deed of record in the office of the clerk of the county court of Wayne County. Vinson owned 55 acres of mineral adjoining the 70 acre tract, and after this conveyance he was assessed on the land books of Wayne county with 125 acres, mineral, which was returned delinquent in his name for non-payment of taxes of 1894 and sold to the State. In a suit subsequently brought by the State against him alone to sell the 125 acres mineral, as forfeited on account of said sale, for the benefit of the school fund, Mary Napier, wife of the plaintiff J. M. Napier, and Elva Sellards became the purchasers. Having transferred the benefit of their purchase to Julia Ann Napier, the said Mary Napier and Elva Sellards, with their husbands, joined with J. H. Marcum, Commissioner of School lands, in a deed, dated February 4, 1901, conveying to Julia Ann Napier the State's right, title and interest in the said minerals.

By deed dated December 27, 1916, Julia Ann Napier conveyed to E. Coffman, with covenants of general warranty, all

the minerals, gas and oil in, on and underlying the 70 acres. Thereafter by mesne conveyances the right, title and interest of E. Coffman passed to and became vested in the defendant Northland Coal Company.

The plaintiffs, R. F. Napier, J. M. Napier, Mary Watts, Benton Napier, Mariah Jane Clark, Tennessee Russell, Jennie Russell, Jay Napier and Jonah Napier, heirs of Julia Ann Napier, asserting title to one-half of the minerals in, on and underlying the 70 acres of land under and by virtue of the writing from James M. Ross, Sr., to Julia Ann Napier, dated January 12, 1872, seek a partition of the said minerals between themselves and the defendant, and an accounting by the defendant for coal mined and appropriated by it from the common property. Holding that plaintiffs had no interest in the subject matter of the suit, the circuit court dismissed their bill upon final hearing.

The defendant would sustain this ruling upon the following theories:

(1) That the first deed or writing executed by James M. Ross is without legal effect and, therefore, passed to the plaintiffs no interest, legal or equitable, in the contested property.

The paper is attacked upon the grounds, (a) that it has no words of grant, and (b) is without definite description of the property intended to be conveyed. Whether it contains language sufficiently formal to convey legal title need not be determined for the purpose of this suit. If without words of conveyance, it may, nevertheless, be treated as a contract passing equitable ownership to the plaintiffs. *Weinrich* v. *Wolf*, 24 W. Va. 299, 314; 36 Cyc. 553, citing numerous decisions. Real estate held by an equitable title only is a proper subject of partition by a suit in equity. *Short* v. *Patton*, 79 W. Va. 179.

The alleged defective description of the property, however, constitutes the major ground of attack. It is said the writing does not indicate by direct reference that the general and particular descriptions apply to the same subject matter, and that the general description alone is insufficient to identify the property. The particular description must have been intended to supplement the general description, otherwise it would have no meaning or place in the writing.

Manifestly the omission of appropriate language was due to inadvertance or lack of skill on the part of the scrivener. In construing written instruments effect should be accorded the intent of the parties appearing from the instrument as a whole, after giving force and effect to all of the language used, in so far as not repugnant to some rule of law. Every word must be taken to have been used for a purpose, and no word should be rejected as surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. 6 R. C. L. 838. In *Blake* v. *Hedrick*, 94 W. Va. 761, 120 S. E. 906, this Court had under consideration a purported deed which named no grantors or grantees in the granting clause. It contained, however, the following covenant: "And the said parties of the first part covenant to and with the said parties of the second part that they have the right to convey the said land to the *grantee,* and that they will warrant generally the property hereby conveyed." · From this covenant, we there held, in sustaining the deed, that the persons named in the caption of the deed "of the first part" were intended, and should be treated, as grantors, and those named therein "of the second part," as grantees. The grantors and grantees in the deed were thus supplied by construction. Where a deed applied to the subject matter shows a manifest omission in the description, and there is sufficient data furnished by the deed to supply the omission, it may be supplied by construction. Devlin on Real Estate (3d Ed.) Sec. 1031-a; *Deal* v. *Cooper,* 94 Mo. 62, 6 S. W. 707; *Hunt* v. *Baker,* 27 Cal. App. 776, 151 Pac. 165; 18 C. J. 184; *Stacey* v. *W. M. Ritter Lumber Co.,* 114 Va. 133, 75 S. E. 1038; *Hamilton* v. *McNeil,* 13 Gratt. 389.

The mere transposition of the particular description to follow immediately the general one in the instrument before us will unite the two descriptions without supplying a word. That the particular description was used to identify the property intended to be conveyed is clearly evidenced by the subsequent acts of the parties. Julia Ann Napier took immediate possession under the instrument and continued to hold and occupy the premises during the remainder of her life. She had the land assessed for taxes in her name and paid the

same. Two years after the making of this writing James M. Ross, Sr., for the purpose of conveying to her the minerals reserved to him in the first document, executed another instrument referring to the former in the following language:

> "I, James M. Ross of the first part do give and bequeath to my daughter Julian Napier of the second part half of the minerals interest belonging to Seventy Acres of land that I first deeded her *according to the meets and bounds of the first deed,* it being a reserve I made in the first deed."

There was no other tract of seventy acres of land "deeded" by James M. Ross, Sr., to Julia Ann Napier to which this reference could apply. Again in the deed from Julia Ann Napier and husband to S. S. Vinson, dated February 18th, 1890, attempting to convey all the minerals, the land is described as being, "the same lands that James M. Ross deeded to Julia Ann Napier." So that both James M. Ross, Sr., and Julia Ann Napier in their deeds subsequently made recognized the writing of January 12, 1872, as conveying the 70 acres.

We are, therefore, of the opinion that the particular description in the contested writing as supplemental to the general description should by construction apply to the property intended to be conveyed. Hence the instrument is not void for insufficient description.

(2)   The defendant further contends that although an estate in remainder may have passed to the heirs of Julia Ann Napier under the contested deed or writing, she nevertheless became vested with a fee simple title in her own right by virtue of the deed from J. H. Marcum, School Land Commissioner, and others conveying to her the State's right, title and interest in the property.

The sale by the School Land Commissioner under the alleged forfeiture and deed in pursuance thereof are void and without legal effect upon the ground that no forfeiture of the minerals of the 70 acre tract occurred by reason of the tax sale to the State. After the attempted conveyance by Julia Ann Napier to S. S. Vinson of all the minerals the 70 acres

remained assessed to her in fee until 1916 or later, and all taxes so assessed were regularly paid by her. The State thereby having received all of its taxes, the alleged delinquency of 1894 was erroneous.

(3)   Estoppel based upon the alleged failure of the plaintiffs to assert title in the lifetime of Julia Ann Napier is set up as a final defense to this suit.

The plaintiffs filed their bill February 6, 1922, just a year and one month after the death of the life tenant. They could not legally have asserted during the life of Julia Ann Napier that they would be her heirs and, consequently, the owners of a vested remainder. To constitute an estoppel of the character under consideration it is necessary that the subject matter of the sale be something in which the interest of the party sought to be estopped is direct and immediate. If there is an intermediate interest on which his own is dependent he cannot be estopped. 21 C. J. 1155; *Marquart* v. *Bradford,* 43 Cal. 526; *Gallagher* v. *Conner,* 138 La. 633, 650, 70 Sou. 539; *Watkins* v. *Peck,* 13 N. H. 360, 40 Am. Dec. 156; *Genobles* v. *West,* 23 S. C. 154; *Sullivan* v. *Moore,* 84 S. C. 426, 65 S. E. 108.

The decree of the circuit court dismissing plaintiffs' bill will be reversed and the cause remanded for further proceedings.

*Reversed and remanded.*