**BURKE v. OWENS–ILLINOIS GLASS CO. et al.**

**No. 911.**

United States District Court,
S. D. West Virginia, Charleston Division.

Sept. 2, 1949.

Garnett & Hall, Madison, W. Va. (A. W. Garnett, and Kenneth Hall, Madison, W. Va.) Walton S. Shepherd, Charleston, W. Va., F. Duane Hill, Charleston, W. Va., for plaintiff.

Rummel, Blagg & Stone, Charleston, W. Va., (Donald O. Blagg, and A. G. Stone, Charleston, W. Va.,) Harry G. Shaffer Madison, W. Va., for defendants.

MOORE, Chief Judge.

Plaintiff filed her action of trespass on the case against defendants in the Circuit Court of Boone County, West Virginia, from which it was removed to this court because of diversity of citizenship. She seeks to recover damages in the amount of $15,000, claiming that defendants have entered upon a 40 acre tract of land which plaintiff says belongs to her in fee, and have drilled a gas well thereon, removing large quantities of gas and damaging the property in various ways. Defendants deny plaintiff's ownership of the minerals in said 40 acre tract.

At the pre-trial conference it became evident that the question of ownership of the minerals in the 40 acre tract was one which must be determined from a consideration and interpretation of the deeds in the chain of title of both plaintiff and defendants, together with other documentary evidence which is not subject to dispute. Thereupon, at the suggestion of the Court, the parties entered into a stipulation which was duly filed in the case, and which presented to the Court the pertinent facts necessary to the Court's decision on the question of ownership of the 40 acre tract. Each party then moved for a summary judgment on this issue.

It is, of course, apparent that if the issue of ownership is decided in favor of plaintiff, the question of damages remains for trial; but if this issue is decided favorably to the defendants, the action must be dismissed.

The 40 acre tract was originally a part of a larger tract on Camp Creek, in Boone County, West Virginia, owned in the year 1856 by one James Dolin. Plaintiff claims through a deed from James Dolin and wife to John Dilday, dated December 12, 1857; while defendants rely on a prior deed from the same grantors, and others, to defendants' predecessors in title, dated May 26, 1856. The stipulation refers to a large number of deeds which are supposed to have some bearing upon the question to be determined; but actually the crux of the matter is the above mentioned deed made on May 26, 1856, in which deed John Dolin, Sr., Peter Dolin, Hiram Dolin, John Dolin, Jr., and James Dolin, together with their respective wives, were grantors, and John Allen, W. G. Allen and Patterson (Allen?) were grantees. If this deed is construed as a deed conveying the minerals in James Dolin's land, it establishes defendants' title to the minerals, which otherwise has no basis of support.

At the time the deed to the Allens was executed the five Dolins, John, Sr., Peter, Hiram, John, Jr., and James, were the owners respectively of five contiguous tracts of land on Camp Creek in Boone County, West Virginia. These lands were originally acquired in two separate tracts by John Dolin, Sr., and James Dolin. John Dolin, Sr., and wife conveyed certain parts of the land acquired by him to Hiram Dolin and John Dolin, Jr.; and John Dolin, Sr., and James Dolin, both singly and together with their wives, con-

veyed to Peter Dolin various tracts consisting of land on both sides of the boundary line between the tracts so acquired by John, Sr., and James. James Dolin and wife also conveyed a part of the tract acquired by James to Andrew J. (Jackson) Dolin, and another part thereof to Craig Walker.

Inasmuch as the interpretation of the deed from the Dolins to the Allens dated May 26, 1856, is decisive of the rights of the parties, I quote it here in full:

"This deed made this 26 day of May in the year of our Lord 1856 by & between John Dolin Sen. & Polly Dolin his wife, Peter Dolin & Nancy Dolin his wife, Hiram Dolin & Sally Dolin his wife, John Dolin Jun, & Jane Dolin his wife James Dolin & Cloe Dolin his wife all of the county of Boone and state of Virginia of the first part and John Allen, W. G. Allen & Patterson of the second part of the city of Richmond and state aforesaid. Witnesseth that for and in consideration of the sum of one dollar by the parties of the second part to the parties of the first part in hand paid, the receipt whereof is hereby acknowledged they the parties of the first part do grant unto the parties of the second part all the minerals in the boundary of land hereinafter describe lying and being in the said county of Boone on Camp Creek a branch of Little Cole river commencing on a sugar tree one the corner trees of Hiram Dolin land & runing a strat to the top of the ridge on the right hand side of Camp Creek as you go up the same, thence up the same with the lines and corners recently run by Peter Dingess to the upper line James Dolin survey thence with said line across the line run by Dingess on lower side of said creek and then folling said line to the begining so as to include all of the lands of Hiram Dolin John Dolin Sen, John Dolin Jr. Peter Dolin on said creek, and the said parties of the first covenant with the parties of second part their heirs and assigns that the said parties of the second part shall have the right of way over their lands to convey their minerals or production of any character from the same & the right to use necessary lumber from the lands of the parties of the first

part for the construction of such ways by paying for therefor a fair and reasonable, but not exhorbient price, and the said parties of the second part covenant with the parties of the first part that John Dolin Senr. during his natural life, & during the natural life of his wife have and enjoy what coal he may find it necessary to use for family purposes from of charge and the parties of the first part further covenant with the parties of the second part their heirs and assigns that they will warrant generally the property hereby conveyed or intended to be conveyed. Witness the following signatures and seals.

| John Dolin | (Seal) |
| Polly Dolin | (Seal) |
| Peter Dolin | (Seal) |
| Nancy Dolin | (Seal) |
| Hiram Dolin | (Seal) |
| Sally Dolin | (Seal) |
| John Dolin | (Seal) |
| Jane Dolin | (Seal) |
| James Dolin | (Seal) |
| Chloah Dolin | (Seal) |

"Virginia Boone County towit

"This day personally came before the undersigned two Justices of the peace in and for Boone County John Dolin Sen. & Poly Dolin his wife Peter Dolin & Nancy Dolin his wife Hiram Dolin and Sally Dolin his wife John Dolin Jr. & Jane Dolin his wife, James Dolin & Cloa Dolin his wife, the above grantors & several acknowledged the foregoing conveyance be their act and deed & Polly Dolin his wife of the grantor John Dolin Sen. Nancy Dolin wife of the grantor Peter Dolin & Sally Dolin wife of the grantor Hiram Dolin & Jane wife of the grantor John Dolin Jr. & Choah Dolin wife of the grantor James Dolin, severally appeared before us being by us prvily examined seperatly and apart from their husbands and having the conveyance above named fully explained to them they severally said that they had willingly signed sealed and delivered the same and that they wish not to retract the it. Given under our hands & seals 26 day of May 1856.

Wilson Kesinger (Seal)
William Griffith (Seal)"

Before undertaking to interpret the disputed provisions of the foregoing deed, it

may be well to set forth the reason why it is considered determinative of the rights of the parties. Plaintiff contends that James Dolin and wife did not by this deed convey the minerals in the tract of land which James Dolin then owned on Camp Creek. Defendants trace their claim of title back to this deed. On the other hand, plaintiff traces her claim of title to the deed from James Dolin and wife to John Dilday, dated December 12, 1857. Manifestly, if the deed from the Dolins to the Allens operated as a conveyance of the minerals in James Dolin's entire tract of land, no claim to the minerals can be based on the later conveyance of a part of the tract in fee to Dilday.

There has been filed with the stipulation of facts a map prepared by one T. S. Flournoy, a civil engineer, which map purports to give the approximate location of the various tracts of land which belonged to the five Dolins on May 26, 1856. This map was prepared by the engineer from the descriptions given in the deeds filed in this case, and while its accuracy is not stipulated, it is stipulated that the map may be considered by the Court. No other map being available, the Court believes it proper to consider the Flournoy map as being approximately correct.

 The description in the deed from the Dolins to the Allens, when properly interpreted, may be fitted to the outside property lines shown on the Flournoy map. It must be borne in mind that the Peter Dingess survey (filed as a stipulation in this case) was a survey of the outside boundary of the land owned by the five Dolins who joined in the deed to the Allens, and that of Jackson Dolin, whose land adjoined the James Dolin tract. Thus the reference to the Peter Dingess line fixes the western and southern boundary line of the tract being described, and brings it to the upper line of the James Dolin tract. (The word "survey" used in the deed is commonly used in old conveyances to mean the same as "tract," "boundary" or "land.") I find that in all these old deeds filed by the stipulation, the words "upper," "lower," "above" and "below" are invariably used with reference to some creek or river and not to geographical directions. The "upper" line of the James Dolin tract, therefore, is naturally the line at the head waters of Camp Creek, as shown at the southeastern corner of the map. The description then reads: " * * * thence with said line" (that is, the upper line of the James Dolin tract) "across the line run by Dingess on lower side of said creek." Obviously, in order to give any meaning to this part of the description, we must supply the word "to" after the word "across." It is the duty of the Court to interpret the deed so as to give meaning, if that can be reasonably done, to every part thereof. This duty extends to the point of supplying an omitted word, if the language given clearly indicates that by the addition of this word, and none other, a logical and natural meaning is imparted to some material portion of the deed which else would be meaningless. See the case of Napier v. Northland Coal Co., 97 W.Va. 247, at page 251, 124 S.E. 915, at page 917, in which the Court said: "Where a deed applied to the subject-matter shows a manifest omission in the description, and there is sufficient data furnished by the deed to supply the omission, it may be supplied by construction." This is such a case.

We know that the upper line of the James Dolin tract cannot *cross* the line run by Dingess, because, insofar as the two are connected at all, the James Dolin line *is* the Dingess line. The Dingess survey included land owned by Andrew J. (Jackson) Dolin; therefore, it left the James Dolin line at some point in the southeastern boundary of James Dolin's land, and joined it again at the point where Andrew J. Dolin's land meets the land of Craig Walker on the eastern boundary line of James Dolin. Thus it would be a contradiction in terms to describe the James Dolin line as crossing the line run by Dingess. On the other hand, when we interpret the description as meaning " * * * thence with said line across" *to* "the line run by Dingess on lower side of said creek and then folling said line to the begining," we have a description which satisfactorily fits the exterior boundary lines shown on the Flournoy map in every particular. The

upper line of the James Dolin tract does run "across" Camp Creek *to* "the line run by Dingess." The "lower side of said creek" obviously refers to that side of Camp Creek which is lower in the sense of being further down Coal River, the stream into which Camp Creek flows.

 When it is concluded, as I have done, that the description in the deed given by natural boundaries and by reference to the Peter Dingess line includes the tract owned by James Dolin, as well as the other four Dolin tracts, the omission of James Dolin from the list of those whose land is said to be included becomes immaterial. That list is merely explanatory and cannot remove from the operation of the grant land the boundaries whereof are clearly described.

Moreover, the deed as a whole clearly shows an intention on the part of James Dolin and wife to convey the minerals in the tract of land owned by them. They owned no other land on Camp Creek. They joined in warranting generally the title to the minerals conveyed. They joined in a covenant with the grantees giving them a right of way "to convey their minerals or production of any character from" the land and to use lumber "for the construction of such ways." They are listed in the deed along with the other grantors, and they signed and acknowledged the deed. There is no indication anywhere in the deed that James Dolin and wife joined the other grantors for any other or different purpose than they themselves entertained, namely, that of conveying to the Allens the minerals in the five tracts. It is obvious to me that the omission of James Dolin's name from the list of those whose lands were included in the description was merely a clerical error of the scrivener or the recording clerk. That it was not the only omission is shown by the fact that the names of the grantees, which are shown by other documents to have been John Allen, W. G. Allen and Patterson Allen, are set out in the deed as "John Allen, W. G. Allen and Patterson" (omitting the surname, Allen); and also by the failure to insert the preposition "to" in one part of the description, which, as already mentioned, it is necessary to supply in order to complete the sense.

I conclude, therefore, that James Dolin and wife, by the deed of May 26, 1856, conveyed to the Allens all the minerals in the tract of land then owned by James Dolin, of which the plaintiff's 40 acres is a part. Plaintiff does not dispute defendants' deraignment of title from the Allens. It follows, therefore, that whatever claim, if any, plaintiff may have to the minerals in the 40 acre tract is subject to the prior and superior title of defendants. Defendants' motion for summary judgment must be sustained, and plaintiff's like motion must be overruled.

Defendants attack plaintiff's right to recover on other grounds; but since I have concluded that the basic instrument on which plaintiff depends is inoperative and furnishes no ground on which plaintiff can found a good title to the minerals in the 40 acre tract, I do not believe it necessary to consider defendants' other defenses to the action.

An order may be submitted in accordance with the foregoing opinion.