# Richmond

## N. A. COGSDALE AND J. L. COGSDALE V. R. HOWARD AND OTHERS.

March 10, 1938.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Spratley, JJ.

The opinion states the case.

*Hugh L. Holland, William S. Holland* and *James G. Martin & Son,* for the appellants.

*James T. Gillette,* for the appellees.

BROWNING, J., delivered the opinion of the court.

This action involves a controversy over the title to a parcel of property known as and called a mill pond, containing about 250 acres, which is about two miles in length and a quarter of a mile in width and is a body of water occupying the said acreage. It is contiguous to a grist mill and mill dam and must, in our consideration, be distinguished from the latter. It is the source of the water which furnishes power for the mill.

At the juncture where we take up our inquiry this grist mill was called Pope's Mill and the pond was associated by deed description with the mill. They had a common owner, who was H. P. Pope, who seemed to have owned, also, a large body of land which was contiguous to the mill pond. R. P. Pope, a son of H. P. Pope, was the common source under whom all the parties contending here claim.

The appellants claim by devolution of title by successive alienations and the appellees claim by devolution of title by inheritance or by descent.

H. P. Pope and wife, by deed dated June 28, 1877, conveyed to his son, R. P. Pope, the property, first referred to, by the following description:

"The following property, to-wit: the mill property—consisting of the grist mill and ten acres of land thereto attached, be the same, more or less, with all of the fixtures to

said mill, all of the pond of said mill to high water mark, the said property was formerly owned and belonged to John W. Myrick, and purchased by the said H. P. Pope of John R. Kilby, Commissioner of said Myrick."

This deed was cited as the wellspring of both claims which are antagonistic.

The next link in the appellants' chain of title is a deed of trust from R. P. Pope and wife to William J. Sebrell, Trustee, dated December 23, 1880, which contains the following description:

" * * * the following Real Estate to-wit: The Grist Mill and eighteen acres of land thereto attached, with all buildings and fixtures thereon situated or thereunto belonging, known as Pope's mill, on the road leading from Jerusalem to Newsomes Depot, it being the same purchased by said R. P. Pope, from his father, H. P. Pope, decd."

From this deed of trust through a number of successive deeds of alienation the appellants undertake to trace their title to the mill pond. The appellees contend that their chain of title was broken at its very beginning because the trust deed did not convey the mill pond and that it was never conveyed away by R. P. Pope and, therefore, at his death descended to his heirs at law and their alienees, among whom were the appellees.

The trial court had all of the alleged title papers in the form of exhibits before it and heard the testimony *ore tenus* of a number of witnesses, upon which it decided that the mill pond belonged to the estate of R. P. Pope, or his heirs or their assigns, and that the appellants, who were the claimants in the court below, never had title to the said mill pond either by purchase or by adverse possession, and further decreed that the complainants shall have an easement in the water of the said pond for the purpose, only, of operating the grist mill mentioned in the evidence.

See *Drake* v. *National Bank of Commerce of Norfolk et al.,* 168 Va. 230, 190 S. E. 302, 306, 109 A. L. R. 1517; *Blacksburg Mining & Mfg. Co.* v. *Bell et al.,* 125 Va. 565, 100 S. E. 806, 811.

It will be noted that the trust deed from R. P. Pope and wife did not convey to the trustee the "pond of the said mill to high water mark" in terms as it was conveyed to him by his father, H. P. Pope. The appellants contend that this omission is supplied in the trust deed by the words "it being the same purchased by the said R. P. Pope, from his father, H. P. Pope, decd." Counsel for the appellees declare that those words only refer to the source from which the grantor got the property and are not intended to be words of description, but if they were the latter then they will be taken to be words of general import rather than those of particular description which go before in the trust deed. And he makes the further point that the trust deed carried only a part of the property embraced in the deed and not all of it and the case of *Glenn* v. *Augusta Perpetual Building & Loan Co.*, 99 Va. 695, 40 S. E. 25, 26, is cited as pertinent authority as follows:

"The theory of Appellant is that Lot No. 4, having been originally a part of Belle Fonte Farm, purchased under the general language of the advertisement, that the trustee would sell 'that certain tract or parcel of land * * *, known as Belle Fonte Farm.'

"But it must be observed that this general description was followed by a newer detailed particular description, which plainly shows that all of Belle Fonte Farm was not intended to be embraced. It is a canon of construction that words 'of particular description' will control rather than general terms of description, when both cannot stand together."

It is remarkable that of thirteen exhibits filed by the appellants, which consist of deeds conveying the mill pond or a portion thereof, that six of the earliest of them, in point of time, do not purport to carry the mill pond, but some of them bear the significant description, "adjoining said mill pond." It is only when we come to the ninth exhibit, which is a deed bearing date in 1905, that the grantors pretend to include in the conveyance the mill pond. The strength of this is broken, however, because the deed refers, for a

more complete description of the land and mill property conveyed, to a former deed from Myrick to Ferguson, which deed contains no specific mention of the mill pond. The succeeding deeds, comprising exhibits ten, eleven and twelve, are likewise weakened as effecting the purpose for which they are cited, and exhibit thirteen, which is the deed under which appellants hold, from Mayfield to themselves, purports to convey only the grantor's interest in the mill pond.

Counsel for the appellants abandoned at bar the defense of adverse possession, so that we need not let that concern us.

We think that the appellants, complainants below, failed to prove a chain of title which established the ownership of the mill pond in them.

We are not in agreement with counsel for the appellants in the statement that the testimony has little to do with the case and that, therefore, the decision of the judge who saw and heard the witnesses is not of such moment as it would ordinarily be. We think that the testimony justifies the conclusion that the right of the owner of the grist mill in the mill pond was limited to that of an easement in the water of the pond.

It is inconceivable that a pond affording fishing, boating and power privileges, containing 250 acres, would be appurtenant to and belong to a small grist mill including a small tract of land. It would be a veritable case of the tail wagging the dog. The mill pond, in its entirety, is not necessary to the enjoyment of the mill, but an easement in its waters is. If this large tract of land were not covered with water there would be no question as to its relation to the mill, even though a stream should run through it which would furnish water for the mill dam. Does the water coverage so change its status as to cause it to bear a different relation to the mill?

In our opinion, the trial judge decided the case correctly and we affirm the decree.

*Affirmed.*